William J. RAVNELL, Petitioner,

v.

Ira M. COINER, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 69–47–E.

United States District Court,
N. D. West Virginia.

Dec. 31, 1970.

was found a few blocks from the scene, suffering from a bullet wound in his stomach. He was picked up by West Virginia police and taken to a hospital where he remained for several weeks. While there, he was advised of his constitutional rights and charged with armed robbery and murder.

Ravnell is a resident of Youngstown, Ohio. His family hired two attorneys from Youngstown who possessed very broad backgrounds in criminal matters. These attorneys represented Ravnell at all phases of preliminary matters as well as upon his final arraignment before the Circuit Court of Brooke County, West Virginia, on April 29, 1968.

At that arraignment Petitioner pleaded guilty to a charge of second degree murder and was sentenced to serve an indeterminate term of not less than five nor more than eighteen years.

At the time of filing his application in this Court for federal habeas corpus relief pursuant to 28 U.S.C.A. § 2241 et seq., Petitioner was an inmate at the West Virginia State Penitentiary in Moundsville, West Virginia. Since that time, however, he has at various times been under medical care at the West Virginia University Medical Center in Morgantown, West Virginia. He had been released under a six months order of executive clemency issued by the Governor of West Virginia, but has since been returned to custody.

Whether or not Petitioner is directly within the custody of Respondent, this Court continues to have jurisdiction over his application for relief. Once jurisdiction properly attaches, "it is not defeated by the release of the petitioner prior to completion of proceedings on such application." Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Rinehart v. Boles, 286 F. Supp. 562 (N.D. W.Va.1968).

Petitioner has exhausted the remedies which have been made available to all state habeas corpus petitioners under West Virginia's very full and complete Post-Conviction Relief Act, West Virgin-

---

Richard W. Cardot, Elkins, W. Va., for petitioner.

Chauncey Browning, Jr., Atty. Gen. of West Virginia, Willard Sullivan, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Shortly after the occurrence of an attempted robbery in Wellsburg, West Virginia, during which several gun shots were fired and one of the intended victims of the robbery was killed, Ravnell

ia Code § 53–4A–1, et seq. (Michie Supp.1969). The Circuit Court of Brooke County, West Virginia, on December 7, 1968, denied the habeas corpus relief which Petitioner sought in that court. He then filed a motion for a rehearing before that court, but it was refused on January 30, 1969. Petitioner subsequently appealed the decision of the Circuit Court of Brooke County to the Supreme Court of Appeals of West Virginia by means of a writ of error. The same was refused without further hearing by an order dated March 31, 1969.

Because of the earlier exhaustion, this Court considered the issues presented in Petitioner's application. The factual nature of those issues necessitated the appointment of counsel by this Court to represent Petitioner in framing the context and content of his allegations so that the full beneficial effects of a plenary hearing could be realized. Points of contention were briefed by counsel and an evidentiary hearing was held in this Court.

A synopsis of all the allegations presented, either in the petition, in counsel's brief, or as adduced at the plenary hearing, are as follows:

I. Petitioner's recorded plea of guilty was involuntarily proffered because:

A. His trial counsel coerced him into entering a guilty plea;

B. His trial counsel otherwise ineffectively represented him;

C. His trial counsel told him that he would get out of jail in three years because of his leg;

D. The racial make-up of the court officers, the jury, and spectators in the courtroom, created a fear in the mind of Petitioner that he could not receive a fair trial if he pleaded not guilty;

E. The publicity given his case in the news media, specifically, television and newspapers, created such a hostility in the community that he felt he could not receive a fair trial; and

F. The treatment which he encountered in jail while awaiting trial influenced his plea.

II. Petitioner's recorded plea of guilty was unlawfully accepted by the trial court.

A. Petitioner did not withdraw his earlier not guilty plea prior to his entry of the guilty plea.

B. The trial court imposed judgment although the records fail to reflect that a plea was entered.

C. Petitioner was forced to become a witness against himself by entry of the plea of guilty.

III. There was error by the Circuit Court of Brooke County in its refusal to rehear Petitioner's habeas corpus action in that court.

I

The United States Supreme Court recently stated, "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). Cf. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L. Ed.2d 473 (1962). Being tantamount to a conviction, a court must carefully insure that the guilty plea was made knowingly and voluntarily before accepting it. Pilkington v. United States, 315 F.2d 204 (4th Cir. 1963); Bailey v. MacDougall, 392 F.2d 155 (4th Cir. 1968); United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y. 1967); Gibson v. Boles, 288 F.Supp. 472 (N.D.W.Va.1968); Rinehart v. Boles, 286 F.Supp. 562 (N.D.W.Va.1968).

As evidenced by cases involving a variety of situations, the circumstances are many which may cause a guilty plea to be involuntarily proffered. 22 C.J.S. Criminal Law § 423(2) (1961). Six such circumstances have been presented on behalf of Petitioner herein.

The first two of these circumstances involve the manner in which Petitioner was represented by his retained counsel. Petitioner asserts generally that the representation which he received was ineffective and specifically that his counsel coerced him into entering a plea of guilty.

The standard which is generally applied to the determination of whether or not an attorney's representation is ineffective is a strict one. Petitioner must show that the representation which he was afforded was a farce, a mockery of justice, or shocking to the conscience of the court. Root v. Cunningham, 344 F.2d 1 (4th Cir. 1965). Petitioner has not carried the burden of proof of this allegation by the preponderance of the credible evidence presented to this Court. Post v. Boles, 332 F.2d 738 (4th Cir. 1964), cert. den. 380 U.S. 981, 85 S. Ct. 1346, 14 L.Ed.2d 274 (1965).

The record indicates that Petitioner's family employed counsel to represent him. After Mr. Hanni was originally retained he requested that Mr. Nybell be hired and retained to assist him. They were both employed while Petitioner was still in the hospital recovering from the gunshot wounds. The first official proceeding at which they represented Petitioner was his appearance before a justice of the peace in a preliminary hearing.

Each attorney discussed the case with Petitioner at least six times prior to the date on which the case was set for trial. Extensive preparations were made by the attorneys with a view toward their defense of Petitioner. A pathologist was consulted with regard to the investigation of the chemistry of blood samplings. Counsel familiarized themselves with the function and utilization of a spectrograph because they believed spectrographic evidence would be relied on by the prosecution. A sampling of the soil in the yard of the deceased's home was taken for spectrographic analysis. The vicinity where the alleged act was said to have occurred was thoroughly examined with regard to various routes which could have been traveled from the home of the deceased to the place where Petitioner was taken into custody and the time which it would take to move along those various routes. Counsel also made an effort to determine the ethnic structure in the area, the public sentiment and the possibility of racial prejudice.

Further, Mr. Nybell related at the arraignment held on April 29, 1968, that "the pretrial motions were sustained in their entirety by the Court, the net effect of which was to inform the defense in substantial detail not only as to the bare facts set forth in the indictment but as to in considerable degree the proof upon which the State would have based its case. * * *" Transcript, p. 7. This shows other efforts which were made by counsel on behalf of their client.

After making their investigations, counsel discussed with Petitioner the merits of the case and the alternatives which were open to him. Mr. Nybell, in response to interrogatories propounded to him by Respondent in this habeas corpus action, stated that

"* * * on the day the case was called for trial we discussed the matter in detail, all possible ramifications. I would not say every conceivable ramification of the case was discussed with Mr. Ravnell; the various alternatives were placed before him, the possible penalties that would be attached to the various pleas of guilty to the various charges were explained, the distinction between first and second degree murder in the State of West Virginia wherein natural life, that is, the natural physical life of the Defendant is the penalty for first degree murder and whereas the lesser penalty attached to the plea of second degree murder was discussed, the possibility of securing an acquittal or a hung jury. All these matters were discussed in detail with Mr. Ravnell; and at no time was he coerced, threatened nor was he promised anything."

Moreover, Petitioner's hired counsel were experienced in handling criminal matters. Each had earlier worked in the office of a prosecuting attorney and they devote a large portion of their time in the practice of law to the defense of accused persons. The work done by these attorneys was obviously that of able and knowledgeable attorneys who prepared their client's case with precision; they counseled him fully. It cannot be said that Petitioner was represent in any manner which even approached a mockery of justice or which shocked the conscience of the court. Root v. Cunningham, supra.

█ The representation received by Petitioner on the day of his arraignment is called into question by his allegation that he was on that day subjected to so much pressure from his attorneys that he gave in to them and pleaded guilty. This contention was not sufficiently buttressed at the evidentiary hearing by the testimony of Petitioner's mother and sister who were with Petitioner throughout the period of plea negotiations. It appears, upon consideration of all the evidence presented, that by means of successful plea-bargaining carried out by counsel, who were fully aware of the prosecution's case against their client, Petitioner was presented with several alternatives concerning the manner in which he could proceed. He and his family weighed the options with great care. Undoubtedly they felt enormous pressure in having to make such a decision, but the Court can find no credible evidence which would support a finding that Petitioner's counsel did anything other than explain the alternatives; such does not imply coercion.

█ There is considerable conflict concerning a promise that was allegedly made to Petitioner that he would be given only a three to five year sentence if he plead guilty. Petitioner's mother testified that this was her understanding. Petitioner's sister stated that the attorney told them that if Petitioner pleaded guilty he would be given a sentence of five to eighteen years but that he would get off in three years. Petitioner, however, stated at the hearing that he understood that he would get five to eighteen years on a plea of guilty, but also that counsel told him that the state would not keep him over three years because of the condition of his leg. It is clear that Petitioner was fully aware of the statutory penalties to which he would be subjected if he pleaded guilty. Parenthetically, speculation that he would be out of prison in three years has materialized as Petitioner was in fact held in West Virginia custody less than two years before getting a *temporary* executive clemency release because of his physical condition. However, such speculation, when it is understood by an accused to be merely speculation, cannot invalidate an otherwise sound guilty plea when the accused knew of the statutory consequences of his plea. Gibson v. Boles, 288 F.Supp. 472, 474 (N.D.W.Va.1968).

This Court can find no threat, promise nor coercive act by Petitioner's counsel which induced Petitioner's plea of guilty. Petitioner was afforded a standard of representation which far surpassed the minimum required, and all contentions to the contrary are without substantial evidence to support them. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967).

█ Petitioner also contends that he involuntarily entered a plea of guilty because the racial make-up of the court officers, the jury, and spectators in the courtroom created a fear in his mind that he could not receive a fair trial.

This allegation is purely subjective as it was originally framed. Petitioner has not presented any evidence, by way of credible testimony, which would support such an allegation. Therefore, this Court must look to see if this particular individual was given to have unusual fears. Mr. Nybell, Petitioner's hired counsel in 1968, related in his answer to Respondent's interrogatories that "while I am not a psychologist and have never

seen the results of any psychological testing on Mr. Ravnell's inherent native intelligence, in my opinion he is of average if not superior intelligence. * * *" Petitioner's demeanor at the hearing held before this Court was of a person who possessed a keen, active mind and maintained an air of quiet confidence.

Petitioner's court appointed counsel for this habeas corpus action presented evidence to show the racial make-up of the courtroom in the Circuit Court of Brooke County on the day Petitioner was arraigned. Thus, this Court is asked to determine whether a racial imbalance existed because of objective factors which systematically excluded members of Petitioner's race, or of any minority race, from the jury panel or from positions in the court itself. This requires a demonstration by Petitioner that not only that particular jury panel, but that the *"jury selection plan,* whatever it is, operates in such a way as always to result in the complete and long-continued exclusion of any representatives at all from a large group of negroes, or any other racial group. * * *" Patton v. Mississippi, 332 U. S. 463, 469, 68 S.Ct. 184, 187, 92 L.Ed. 76 (1947) (Emphasis added). The United States Court of Appeals for the Fourth Circuit has in recent years mollified the standard to be applied. Now it must apparently be shown that there was "disproportionate representation which was recurrent, systematic and relatively uniform in degree." Witcher v. Peyton, 405 F.2d 725 (4th Cir. 1969).

The only document presented by Petitioner shows that other than Petitioner and his family, there was at least one other non-Caucasian in the courtroom at the time Petitioner entered his guilty plea, that being a Negro man who was on the jury panel called for that term of court. Thus, no evidence has been offered which approaches the guidelines established by *Patton* and *Witcher.*

■ The next alleged cause of Petitioner's guilty plea is that because of the publicity given this case by the news media, and because of the hostility created in the community by that publicity, Petitioner felt that he could not receive a fair trial. Examples of news reports of the case from both television and newspapers were placed into evidence by Petitioner. Nothing is contained in those reports which was inflammatory or even extraordinary; they are merely examples of objective news reporting. Most certainly, the type of press coverage which was condemned by the United States Supreme Court in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) is not even approached.

Moreover, on direct examination in the hearing before this Court, Petitioner stated that he did not know what publicity had been given to the case. When cross-examined by Respondent, Petitioner said that he was not permitted to read or hear any news while he was in the hospital or while he was in jail before making his plea. Statements which Petitioner knew nothing about could not have had any coercive effect upon him.

Another issue bearing on the voluntariness of the recorded guilty plea was raised for the first time at the plenary hearing in this Court. Petitioner averred that the treatment which he encountered in jail awaiting trial was bad in that he was placed in solitary confinement in a dirty cell and that this treatment influenced his plea. However, other than Petitioner's conclusionary statements, no attempt has been made to present any evidence which would give credibility to those statements. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967).

■ Thus, there have been six alleged items which were said to have influenced Petitioner to enter an involuntary plea of guilty. Taken individually, they afford no basis which can support such a claim. The mere fact that so many discrepancies are said to have occurred suggests that none of these allegations

are valid. United States v. Sawyers, 423 F.2d 1335 (4th Cir. 1970).

The Court must also consider whether the cumulative effect of all these alleged items would have influenced Petitioner to enter an involuntary plea, where, taken individually, they would not have that effect. To attempt to answer this problem would be a demonstration of futility. The Court cannot presume to know the subjective fears of Petitioner. It can only be reiterated that Petitioner had the appearance of a man of above average intelligence who would not be given to have any particular anxiety or fear.

## II

■ The recorded guilty plea is next attacked because of the manner in which it was given, accepted, and used by the trial court. The allegations made in support of this contention are without merit.

Petitioner relies first upon the fact that the trial court did not formally withdraw his not guilty plea prior to the entry of his plea of guilty. This is the reverse of the situation normally contemplated. However, even if true, no showing is made that the law requires such a useless act; nor can it be demonstrated that Petitioner was prejudiced in any manner by means of this procedure.

The recent Supreme Court decisions construing Rule 11 of the Federal Rules of Criminal Procedure and constitutional requirements, dealing with the entry of pleas in criminal matters, make no mention of the procedure suggested here. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). It is noted that Boykin v. Alabama, supra, dealing with the acceptance of guilty pleas in state trial courts, is not retroactive. Hawkins v. Coiner (4th Cir. Memo. 14,234, April 14, 1970). Nor is mention made of this alleged discrepancy in the outline of suggested practice for the withdrawal of pleas sanctioned by the American Bar Association. ABA, Standards Relating to Pleas of Guilty, Part II (Tent. Draft 1967). The only statement of law cited by Petitioner in this regard is directly contrary to the position he asserts. This is the case of State v. Shanley, 38 W.Va. 516, 18 S.E. 734 (1893), wherein syllabus #1 by the Supreme Court of Appeals of West Virginia states, "On an indictment for a violation of the state revenue law in selling spirituous liquors without a license the plea of guilty may be entered without formally and expressly withdrawing a plea of not guilty theretofore entered."

Moreover, Petitioner was fully aware of the consequences of a change in plea. The court carefully explained to him that he had a right to remain silent and have the matter tried by a jury. This took place prior to the entry of the guilty plea and is reflected on page 5 of the arraignment transcript.

■ Secondly, Petitioner contends that he did not actually plead guilty. He claims that the following colloquy took place between him and the Judge of the Circuit Court of Brooke County when he returned to the courtroom after discussing the decision to plead guilty with his family and his attorneys:

I said—I made a statement—he asked me did I want to plead guilty and I said "Yes." So—I don't know —they accepted it for a guilty plea. To my opinion I hadn't really pled guilty yet.

\* \* \* \* \* \*

He told me to be seated—I wanted to talk, you know—I mean I didn't—I didn't have no more to say.

\* \* \* \* \* \*

I wanted to say more, I said "Yes, Sir, I'd like to—" and he told me to be seated.

The arraignment on page 8 of the transcript contains the following:

MR. NYBELL: May I proffer a plea on his behalf? I don't think he understands the mechanics.

THE COURT: All right, and then we will see.

MR. NYBELL: Your Honor, we proffer or tender a plea under Section 61–2–3 of the West Virginia Code, subsection being styled "Penalty for murder of second degree"—we proffer a plea of guilty to a charge of murder in the second degree.

THE COURT: Does the State wish to oppose or not oppose the acceptance of such a plea?

MR. McMULLEN: The State will make no opposition to such a plea.

THE COURT: Mr. Ravnell; do you wish to plead guilty to second degree murder to his indictment?

THE DEFENDANT: Yes, sir.

THE COURT: All right, you may be seated. The plea has been received and the same is accepted.

This clearly shows that the guilty plea was offered by Petitioner's counsel and consented in by Petitioner.

The manner in which the words are offered are alway important to their complete understanding. However, in a pre-*Boykin* arraignment, as here, the above procedure was common. Since Boykin is not to be applied retroactively, the procedure remains sufficient. Hawkins v. Coiner (4th Cir. Memo. 14,-234, April 14, 1970).

The third contention, that Petitioner was forced to become a witness against himself by his entry of a guilty plea is without merit. This is essentially an attack upon the constitutionality of guilty pleas which under the circumstances here presented is not further considered by the Court. It is totally devoid of merit.

### III

Finally, Petitioner asserts that the Circuit Court of Brooke County, West Virginia, committed error when it refused to rehear Petitioner's habeas corpus action in that court.

The record in the Circuit Court of Brooke County indicates that on November 4, 1968, Petitioner filed his petition for a writ of habeas corpus in that court. This petition was dismissed by the court in a written memorandum of opinion entered on November 4, 1968, and a subsequent dismissal order entered on December 7, 1968. On January 17, 1969, Petitioner filed a petition for a rehearing in that court which was denied by another memorandum of opinion entered on January 23, 1969, made effective by an order entered on January 30, 1969. Yet another motion for rehearing was filed by Petitioner on January 29, 1969.

 The situation here encountered is again the opposite of the more common contention of prisoners who desire to avoid the state remedies provided for post-conviction habeas corpus relief and enter this Court without having exhausted those remedies. Nevertheless, the Circuit Court of Brooke County had, in this instance, twice considered Petitioner's claims for habeas corpus relief and had twice denied the same. Having exhausted that remedy, it was appropriate for Petitioner to seek relief in another forum. It cannot be said that the Circuit Court's refusal to hear Petitioner's claims constitutes a constitutional deprivation of his rights. The decision as to whether to grant relief, deny relief, or to hold an evidentiary hearing on factual issues, if any exist, is a matter of discretion with the courts of West Virginia. West Virginia Code §§ 53–4A–3 and 7 (Michie Supp.1969). In accordance with the principles of comity, this Court will not consider a matter which is discretionary within the state court system and from a consideration of all matters here presented was a valid and proper exercise of discretion.

For the reasons above stated, it is adjudged and ordered that Petitioner's claims for federal habeas corpus relief be, and the same are hereby, denied, and the petition herein is dismissed and retired from the docket of this Court.

If Petitioner should desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within 30 days from the date of entry of this order, pursuant to

Rule 4 of the Rules of Appellate Procedure. The notice of appeal should also include a request for a certificate of probable cause which is required for an appeal by 28 U.S.C.A. § 2253. These papers should be submitted in duplicate.