PAUL WOODS, *et al.*

*v.*

WILLIAM WHYTE, *Supt.*

*Huttonsville Correctional Center, et al.*

(No. 14203)

Decided October 10, 1978.

*John G. Ours* for relators.

*Chauncey H. Browning,* Attorney General, *Pamela D. Tarr,* Assistant Attorney General, for respondents.

NEELY, JUSTICE:

The Court granted this original writ of habeas corpus for the purpose of evaluating two claims: first, that relators' prison discharge dates have been computed in a way which extends prison service beyond the expiration of their sentences, and second, that good-time credit is illegally withheld from parolees. We hold that relators have not sustained their allegations concerning extended terms of sentence and that the statutes establishing good-time credit and parole do not contemplate good time for parolees. Consequently, we deny relief.

I

The relators are convicted felons who were returned to the Huttonsville Correctional Facility after violating parole. They allege in their brief that upon return, their sentences were increased by the amount of good time they would have earned had they remained in custody. After examination of respondents' detailed affidavits, we find that this is not the case. Relators' mistake is understandable, however, given the complexity of the good-time computation system.[1] Under *W.Va. Code*, 28-5-27 [1923] and 28-5-27a [1951],[2] there are two types of good time available:

---

[1] Recent changes in the good-time statute may have added to the confusion. *W.Va. Code*, 28-5-28, effective July 1, 1977, provided a different method for the determination of good time. This Court later held that *W.Va. Code*, 28-5-28[1977] impliedly repealed *W.Va. Code*, 28-5-27 [1923]. *Woodring v. Whyte* ___ W. Va. ___, 242 S.E.2d 238 (1978). When it appeared that some prisoners would serve longer terms under the new system than under the time-honored interpretation of the old one, it was provided by Executive Order #8-78 that all inmates incarcerated before May 1, 1978 be classified according to the old statute and its generous administrative interpretation.

[2] *W.Va. Code*, 28-5-27 [1923] and 28-5-27a [1951] provide as follows:
§ 28-5-27. Deduction from sentence for good conduct.

Every convict sentenced to the penitentiary for a definite *term, and not for life, who shall faithfully comply with all the rules and regulations of the penitentiary during his term of confinement, shall be entitled to a deduction of his sentence as follows: Upon a sentence of one year, five days from each month; upon a sentence of more than one year, and less than*

1) *Law-Allowable Good Time—W.Va. Code*, 28-5-27 [1923]: This authorizes as much as 10 days per month for inmates who have not violated any prison rules in a given month.

2) *Warden's Good Time—W.Va. Code*, 28-5-27a [1951]: This authorizes the warden to grant additional good time at his discretion which he appears to have set at 4-½ days per month.

Based upon these statutes, three hypothetical discharge dates can be calculated for an inmate when he is admitted to the Facility:

I) *Full-time date*—The day on which the inmate will have served his maximum sentence. The Facility cannot hold an inmate beyond this date.

II) *Expiration date*—The date an inmate will be released if he earns all of his law-allowable good time. An inmate with no infractions against him will be released on this date by operation of law.

III) *Minimum discharge date*—The earliest date an inmate can be released unless he is sooner paroled. This projection assumes that the maximum of both law-allowable and warden's good time will be earned.

In order to be released on the minimum discharge date, an inmate must earn the maximum amount of

---

three years, six days from each month; upon a sentence of not less than three years, and less than five years, seven days from each month; upon a sentence of not less than five years, and less than ten years, eight days from each month; upon a sentence of ten years or more, ten days from each month. When a prisoner has two or more sentences, the aggregate of his several sentences shall be the basis upon which his deduction shall be estimated.

§ 28-5-27a. Extra good time allowance for certain convicts.

The warden may, with the approval of the governor, allow, in addition to that now permitted by law, such good time to convicts, except life prisoners, working either outside or inside the walls of the penitentiary, as he may deem proper: Provided, however, that the same shall not exclude those who are physically or mentally incapacitated from working, from receiving such good time allowances.

good time, or 14-½ days for an inmate serving ten or more years. When an inmate is returned from parole 14-½ days are added to the minimum discharge date (*not* the full-time date) for every month he spent on parole.[3] Relators have consequently mistaken the minimum discharge date (a magic date in the imagination of many inmates) for the full time date, which explains their erroneous perception that 14-½ days have been added to their sentences for each month of parole.

## II

Relators' second claim concerns the basis upon which the minimum discharge dates were revised, namely, that good time should be allowed to parolees. In asserting that good time should be granted to parolees, relators argue that parolees are among the best prisoners, and that the relators in particular offer especially compelling cases, because their parole was revoked for "technical" violations. However, good time is a purely statutory creation and is designed to advance the goal of improved prison discipline. *W.Va Code*, 28-5-28 [1977].[4] Consequently, the stated purpose of good time does not apply to parolees, who are not part of the prison population and are not subject to its discipline.

---

[3] Denial of good time to parolees has been the rule in this state, and was recently reaffirmed in *Woodring v. Whyte*, ___ W. Va. ___, 242 S.E.2d 238 (1978). The issue is more fully briefed in the case before us now, however, and we have taken this opportunity to re-examine it in detail.

[4] Although *W.Va. Code*, 28-5-27 [1923], which applies to relators here (*see* note 1, *supra*) did not contain an explicit statement about the policy of good time, we may reasonably infer that its purpose was to enhance discipline. As corporal punishment disappears from our penal institutions, good time becomes more important as an incentive to good behavior. The federal system and forty-seven states now have good time statutes. *See* Jacob, *Prison Discipline and Inmate Rights*, 5 Harv. C.R.-C.L. L. Rev. 227, 231 n. 17, 231-33 (1970). We see no reason, however, to reward an inmate whose parole has been revoked with the additional credit towards his maximum sentence which an award of good time would provide, and there is nothing in the statutory language which would imply otherwise.

The discipline and supervision of parolees is entrusted to the state Board of Probation and Parole by *W.Va. Code*, 62-12-18 [1959]. The Board may, if it deems a parolee rehabilitated, release him from further supervision and terminate his sentence. The Board, unlike the custodial facilities, does not need good time to motivate parolees to good behavior as the loss of parole itself is a powerful incentive.

We are led to the inescapable conclusion that the legislature did not intend that good time credit apply to parolees, and as the relators have not proven their claim to confinement in excess of maximum sentences, the writs prayed for are denied.

*Writs denied.*