537 S.E.2d 647

**STATE of West Virginia ex rel. Robert VALENTINE, Petitioner,**

v.

**Ron WATKINS, Sheriff of Marion County, Respondent.**

**No. 27444.**

Supreme Court of Appeals of West Virginia.

Submitted June 6, 2000.

Decided July 14, 2000.

Keith Skeen, Public Defender Corporation, Clarksburg, West Virginia, Attorney for the Petitioner.

Darrell V. McGraw, Jr., Attorney General, Charles Houdyschell, Jr., Assistant Attorney General, Charleston, West Virginia, Attorneys for the Respondent.

DAVIS, Justice:

In this original jurisdiction proceeding, the petitioner herein, Robert Valentine [hereinafter "Valentine"], requests this Court to issue a writ of habeas corpus to secure his release from incarceration from the respondent herein, Ron Watkins, Sheriff of Marion County [hereinafter "Sheriff Watkins"].[1]

---

1. Sheriff Watkins suggests that the proper party respondent is not him, but rather the West Virginia Division of Corrections [hereinafter "D.O.C."] because Valentine is a D.O.C. inmate, who, at the time he filed his petition with this Court, was housed in the Marion County Jail while awaiting transfer to a D.O.C. facility. The parties intimate that now, however, Valentine has been transferred to a D.O.C. facility, although it is unclear where he is presently incar-

Specifically, Valentine challenges the calculation of his discharge date, September 6, 2000, and contends that he should have been granted good time credit for his detention pending the West Virginia Parole Board's [hereinafter "Parole Board"] review of his parole status, which review was necessitated by his February 3–4, 1999, parole violations. Upon a review of the parties' arguments and the pertinent authorities, we grant as moulded the requested writ of habeas corpus. Having concluded that the Parole Board failed to conduct Valentine's parole revocation hearing within the time allowed for such a proceeding, we find that he is entitled to good time credit for that period of his detention necessitated by the Parole Board's delay.

## I.

## FACTUAL HISTORY

The facts underlying Valentine's petition for habeas corpus relief commence with his conviction of unaggravated robbery [2] on June 3, 1988, and his resultant sentence therefor of 5–18 years in the West Virginia State Penitentiary.[3] At the time of his incarceration, Valentine's minimum discharge date

was estimated to be June 3, 1997, provided he earned good time credit while in prison.[4] Since his initial imprisonment, however, officials with the West Virginia Division of Corrections [hereinafter "D.O.C."] have calculated that Valentine has lost a total of 830 days of good time credit during his incarceration, which time had to be added back to his minimum discharge date. With this adjustment, Valentine's minimum discharge date would have been September 23, 1999.

Following his incarceration for the minimum term of his robbery sentence, Valentine was released on parole on June 29, 1993.[5] As a result of an undisclosed parole violation and his status as an absconder, Valentine, who was returned to custody on September 23, 1994, was charged with 7 months and 1 day good time not earned and 22 days for absconding, which time was added to his minimum discharge date. Therefore, Valentine's new minimum discharge date was calculated as being May 17, 2000.

On February 3, 1999, Valentine was again released on parole and again violated the conditions thereof. Pending the Parole Board's review of his parole status, Valentine

---

cerated. If this is, in fact, the case, then Sheriff Watkins is correct, and the D.O.C., and not he, is the proper respondent to Valentine's petition. *See* W. Va. R. Governing Post–Conviction Habeas Corpus Proceed., App. A (designating party respondent as the "authorized person having custody of petitioner"). *See also* W. Va.Code § 53–4A–3(b) (1971) (Repl.Vol.1994) (indicating that writ for post-conviction habeas corpus "shall be directed to the person under whose supervision the petitioner is incarcerated"); W. Va.Code § 53–4A–5 (1967) (Repl.Vol.1994) (directing writ for post-conviction habeas corpus to be "served upon the person to whom it is directed, or, in his absence from the place where the petitioner is incarcerated, upon the person having the immediate custody of the petitioner").

**2.** See W. Va.Code § 61–2–12 (1961) (Repl.Vol. 1997) for the statutory definition of unaggravated robbery.

**3.** Valentine also was convicted, on December 15, 1988, of burglary and sentenced to 1–15 years for that crime. *See* W. Va.Code § 61–3–11 (1973) (Repl.Vol.1992) (enumerating statutory elements of crime of burglary). The sentence Valentine received for his burglary conviction, however, is not at issue in the case *sub judice*, nor is it clear

whether his sentence for burglary was to be served concurrently with or consecutively to his sentence for unaggravated robbery.

**4.** W. Va.Code § 28–5–27 (1984) (Repl.Vol.1999) entitles an incarcerated individual, except for one who is sentenced to life imprisonment, to earn "good time" credit equivalent to one day for each day he/she is incarcerated, provided he/she abides by the disciplinary rules of the correctional facility in which he/she is housed. *See also* W. Va.Code § 61–11–16 (1941) (Repl.Vol.1997) (treating sentence for indeterminate number of years as a "general sentence of imprisonment in the penitentiary"). Thus, if an inmate earns all of the good time credit to which he/she is entitled and has no deductions therefrom for disciplinary infractions, the net effect of the good time statute is to permit an individual who is serving an indefinite sentence to be discharged after serving one-half of his/her maximum term of confinement.

**5.** An individual who is serving an indeterminate sentence "[s]hall have served the minimum term of his or her indeterminate sentence" in order to be eligible for parole. W. Va.Code § 62–12–13(a)(1)(A) (1986) (Cum.Supp.1986). *Accord* W. Va.Code § 62–12–13(b)(1)(A) (1999) (Supp.1999).

was detained in the Marion County Jail.[6] The Parole Board held a final revocation hearing on March 25, 1999, and issued its recommendation on April 14, 1999.[7] In rendering its decision, the Parole Board evaluated the four parole violations, with which Valentine had been charged and to which he had pleaded guilty, and the circumstances surrounding these charges:

*Charge # 1:* You did violate Special Condition # 5.4 of your Parole Agreement governing your release on parole in that on 2–3–99 you did not adhere to your 8:00 p.m. to 6:00 a.m. curfew.

*Mitigation:* Parolee [Valentine], through counsel, admitted the curfew violation occurring on the same day he was released from prison for the past four and one-half (4½) years. Parolee indicated that he spent the night with his girlfriend.

. . . .

*Charge # 2:* You did violate Special Condition # 5.3 of your Parole Agreement governing your release on parole in that on 2–4–99 you did consume alcohol.

*Mitigation:* Parolee admitted consumption of beer.

. . . .

*Charge # 3:* You did violate Rule a of the WV Rules and Regulations governing your release on parole in that you failed to report in person to your parole officer on 2–4–99 as directed.

Dismissed by this hearing member.

*Charge # 4:* You did violate Rule e of the WV Rules and Regulations governing your release on parole in that you failed to maintain behavior that does not threaten the safety of yourself or others in that on 2–4–99 you fled the custody of your Parole Officer Deanna Lindsey, and Fairmont City Police Officer Brian Schuck.

*Mitigation:* Parolee admitted fleeing custody. . . .

Based upon this information and additional evidence presented at the hearing, the presiding Parole Board hearing member found, as follows:

*Recommendation:* The fact that the Parolee violated the same day of his release is on its face, ridiculous. Moreover, subject previously violated parole in 1994. His new minimum discharge date appears to be 5/17/2000. It is doubtful that basic incarceration for another year will offer a cure for his alcoholism, even though the offer of reincarceration on Substance Abuse Unit 19 at PCC is possible and offer [sic] promise. What we see here is misconduct by an alcoholic more than criminal behavior. I believe the testimony of Echols Lambert is important.[8] I also believe that Officer Lindsey had little choice but to institute revocation. In this matter, I choose to blunder on the side of mercy. Reluctantly, I recommend · reinstatement of parole for Parolee Valentine predicated on an approved out-of-state home plan.

(Footnote added).

Upon the Parole Board's reinstatement of his parole, Valentine was required, as a condition of his parole, to complete an inpatient substance abuse treatment program.[9] Following the completion of this program, Valentine was re-released on parole. The exact date of his release, however, is disputed by the parties. Valentine contends that he was not released until June 24, 1999, while the D.O.C. states that he was released on June 18, 1999. Thereafter, on September 3, 1999, Valentine was determined to have re-violated the conditions of his parole, and, on September 9, 1999, was again committed to custody. As a result of the ultimate revocation of his

---

**6.** Valentine was imprisoned in the Marion County Jail on February 10, 1999, and remained there until he was transferred to a 30–day inpatient substance abuse treatment program on May 21, 1999.

**7.** A copy of the Parole Board's "Summary and Recommendation" resulting from its March 25, 1999, parole revocation hearing was mailed to Valentine on April 26, 1999.

**8.** During the revocation hearing, Lambert Echols, [Marion County] Jail Administrator, testified voluntarily on behalf of Parolee. Lambert testified that Parolee has never posed a threat to society. He further affirmed his opinion of a sincere bond between Parolee and her [sic] son. Lambert expressed his hope that the Board would consider reinstatement for Parolee.

**9.** *See supra* note 6.

second parole, Valentine was charged with 3 months and 15 days good time not earned and 6 days for his absconder status. When these figures were added to his prior discharge date, the D.O.C. determined Valentine to be eligible for release on September 6, 2000.

Upon learning of his amended discharge date, Valentine petitioned this Court for a writ of habeas corpus. On December 29, 1999, we granted Valentine's petition and issued a rule to show cause.

## II.

### STANDARD FOR ISSUANCE OF WRIT

■ Procedurally, this case comes before us on Valentine's petition for post-conviction habeas corpus relief. Generally, *"Habeas Corpus* is a suit wherein probable cause therefor being shown, a writ is issued which challenges the right of one to hold another in custody or restraint." Syl. pt. 4, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925). *Accord* Syl. pt. 4, *State ex rel. Roach v. Dietrick,* 185 W.Va. 23, 404 S.E.2d 415 (1991) (" 'A writ of habeas corpus ad subjiciendum will lie to effect the release of one imprisoned in the State Penitentiary without authority of law.' Syllabus Point 1, *State ex rel. Vandal v. Adams,* 145 W.Va. 566, 115 S.E.2d 489 (1960)."); *Tasker v. Griffith,* 160 W.Va. 739, 742, 238 S.E.2d 229, 231 (1977) ("Habeas corpus lies to test the legality of the restraint under which a person is detained."); Syl. pt. 1, *State ex rel. Tune v. Thompson,* 151 W.Va. 282, 151 S.E.2d 732 (1966) ("The sole issue presented in a habeas corpus proceeding by a prisoner is whether he is restrained of his liberty by due process of law.").

With respect to the instant petition, W. Va.Code § 53–4A–1(a) (1967) (Repl.Vol.1994) explains to whom a post-conviction writ of habeas corpus is available.

> Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without juris-diction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common-law or any statutory provision of this State, may, without paying a filing fee, file a petition for writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction and sentence, or other relief, if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence....

■ When considering whether such a petition requesting post-conviction habeas corpus relief has stated grounds warranting the issuance of the writ, courts typically are afforded broad discretion. *See* W. Va.Code § 53–4A–3 (1971) (Repl.Vol.1994); W. Va. Code § 53–4A–7 (1967) (Repl.Vol.1994). *See also Ravnell v. Coiner,* 320 F.Supp. 1117, 1124 (N.D.W.Va.1970) ("The decision as to whether to grant relief, deny relief, or to hold an evidentiary hearing on factual issues, if any exist, is a matter of discretion with the courts of West Virginia." (citing W. Va.Code §§ 53–4A–3 and 53–4A–7)); *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 141, 254 S.E.2d 805, 811 (1979) ("The case is before us on an original petition for writ of habeas corpus, and under W. Va.Code, 53–4A–7(c), of the Post–Conviction Habeas Corpus statute, we are given broad powers in fashioning the form of relief accorded in a habeas corpus proceeding." (footnote omitted) (citations omitted)); *Perdue v. Coiner,* 156 W.Va. 467, 469–70, 194 S.E.2d 657, 659 (1973) ("[T]he statute [W. Va.Code § 53–4A–3] contemplates the exercise of discretion by the court...."). Having set forth the standard

for issuing the requested writ, we turn now to consider the parties' contentions.

## III.

## DISCUSSION

The issue presented for our resolution in the instant proceeding is whether an individual, who has been charged with violating the conditions of his/her parole and who is detained in a county jail pending a parole revocation proceeding, is entitled to receive good time credit for the period of his/her detention. Inherent in this query also is the presumption that said individual's parole status ultimately is revoked, thus requiring him/her to serve further time in a correctional facility, which term of confinement may be reduced by such good time credit.[10]

■ "The provisions of West Virginia Code § 28–5–27 (1992) solely govern the accumulation of 'good time' for inmates sentenced to the West Virginia State Penitentiary." Syl. pt. 3, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997). "Good time" credit contemplates a reduction of or "commutation from ... sentence[ ] for good conduct." W. Va.Code § 28–5–27(a) (1984) (Repl.Vol.1999). "All adult inmates now in the custody of the commissioner of corrections, or hereafter committed to the custody of the commissioner of corrections, except those committed pursuant to article four [§ 25–4–1 et seq.], chapter twenty-five of th[e West Virginia] code" are eligible to receive good time credit, *id.*, provided they abide by the disciplinary rules in effect for the particular institution in which they are housed. *See* W. Va.Code § 28–5–27(f). When an individual has earned good time, he/she typically receives "one day good time for each day he or she is incarcerated." W. Va.Code § 28–5–27(c). In certain circumstances, however, "extra good time [may be allowed] for inmates who perform exceptional work or service." W. Va.Code § 28–5–27(i).

■ Because the governing law is a legislative enactment, the intent of the Legisla-

ture in establishing good time is essential to its understanding and application. Good time "is designed to advance the goal of improved prison discipline." *Woods v. Whyte*, 162 W.Va. 157, 160, 247 S.E.2d 830, 832 (1978) (citation omitted) (footnote omitted). More specifically, "[t]he purpose of awarding good time credit is to encourage not only rehabilitative efforts on the part of the inmate by encouraging the industrious and orderly, but also to aid prison discipline by rewarding the obedient." *Woodring v. Whyte*, 161 W.Va. 262, 275, 242 S.E.2d 238, 246 (1978). For this reason, then, it is well-accepted that the governing statute, W. Va. Code § 28–5–27, "do[es] not contemplate good time credit for parolees." Syl. pt. 2, in part, *Woods*, 162 W.Va. 157, 247 S.E.2d 830.

■ Thus, the brief answer to Mr. Valentine's query is no: "[a] prisoner is not entitled to good time credits while on parole." Syl. pt. 11, *Woodring*, 161 W.Va. 262, 242 S.E.2d 238. In fact, such an allowance is expressly prohibited by W. Va.Code § 28–5–27(c): "No inmate may be granted any good time for time served either on parole or bond or in any other status whereby he or she is not physically incarcerated."

■ Despite this definite statement of the prohibition of awarding good time credit to parolees, good time credit nevertheless remains "a substantive right." Syl. pt. 7, in part, *Woodring*, 161 W.Va. 262, 242 S.E.2d 238. *Cf.* Syl. pt. 8, in part, *id.* ("Commutation of time for good conduct is a right created by the Legislature. It is not recognized as a fundamental right or a part of a constitutional freedom."). Likewise, the context within which Valentine seeks credit for his good behavior, *i.e.*, a parole revocation proceeding, also warrants special treatment. "A parole revocation hearing, being a critical proceeding at which the accused parolee's liberty is in jeopardy, must be conducted within the protections afforded by the state and federal constitutions." Syl. pt. 1, *Dobbs v. Wallace*, 157 W.Va. 405, 201 S.E.2d 914

---

**10.** We note, at the outset, that our consideration of Valentine's petition is limited to the facts surrounding his February, 1999, parole violations, and our discussion thereof does not concern his September, 1999, parole violations, which ultimately resulted in the revocation of his parole status and his present incarceration.

(1974). Among the duties of the Parole Board in ensuring that an individual's rights are not unconstitutionally trammeled are its obligations to "obey legislation and ... [to] act in a way which is not unreasonable, capricious, or arbitrary." Syl. pt. 3, in part, *State ex rel. Eads v. Duncil,* 196 W.Va. 604, 474 S.E.2d 534 (1996). *Accord Brewer v. Boles,* 261 F.Supp. 920, 921 (N.D.W.Va.1967) (recognizing that " '[t]he Board of Parole must obey applicable legislation but otherwise it is only required to perform its functions fairly, under fair procedures[; i]t may not act unreasonably, capriciously or arbitrarily' " (quoting *Jones v. Rivers,* 338 F.2d 862, 874 (4th Cir.1964))).

◼ Of particular relevance to the proceedings underlying the instant petition is the Parole Board's responsibility to provide "a parolee [who] is under arrest for violation of the conditions of his[/her] parole ... a prompt and summary hearing...." W. Va. Code § 62–12–19 (1981) (Repl.Vol.1997).[11] "The word 'prompt,' in this instance, contemplates a hearing within a reasonable time." 47 Op. Att'y Gen. 16, 18 (W.Va.1956). Pursuant to the corresponding regulations,

> the Board shall convene a revocation hearing only if it receives the aforementioned report [12] and transcript [13] *no later than the thirty-fifth (35) day after either the date on which the parolee received written notice of the charges or the date on which the parolee was incarcerated, whichever occurred sooner.* However, the running of the thirty-five (35) day period shall be stopped by:

**11.** Although W. Va.Code § 62–12–19 (1981) (Repl.Vol.1997) recently has been amended, the pertinent portion has not been substantially changed. *See* W. Va.Code § 62–12–19(b) (1998) (Supp.1999).

**12.** The report to which this regulation refers is a report, which is prepared by the D.O.C. and which describes the parole violations with which the parolee has been charged. 7A W. Va.C.S.R. § 92–1–11.1(a)(1) (1983). The receipt of this report is a prerequisite to the Board's ability to conduct a parole revocation hearing. *Id.*

**13.** This transcript is "[a] transcript of a preliminary revocation hearing on the charges." 7A W. Va.C.S.R. § 92–1–11.1(a)(2).

(1) Any continuance which is sought and obtained by counsel for the parolee before the preliminary revocation hearing, or

(2) The pendency of any criminal charge which is also the basis of any charge of a violation of parole conditions. This subsection shall not be applied to stop the running of the thirty-five (35) day period for any other charge, or

(3) The absence of the parolee from the boundaries of this State for whatever reason, or

(4) The escape or absconding of the parolee [sic] custody of a jail or the supervision of the Department.[14]

The Department shall make a written statement to the Board explaining the facts and circumstances of any of the four (4) aforementioned causes for stopping the running of the thirty-five (35) day period.

7A W. Va.C.S.R. § 92–1–11.1(b) (1983) (footnotes added) (emphasis added). Also governing the Parole Board's actions is the directive which mandates that "[t]he revocation hearing shall in any event be held *no later than thirty (30) days after the date upon which either the preliminary hearing is held or upon which a written waiver of the preliminary hearing is executed."* 7A W. Va. C.S.R. § 92–1–11.2(b) (1983) (emphasis added).

◼ While these dates certain vary, the clear import of the Legislature is that to be "prompt," a parole revocation hearing must be held within thirty to thirty-five days of the qualifying operative criterion unless an exception operates to toll the thirty-five day limitation. *Cf. Larson v. McKenzie,* 554 F.2d

**14.** In this state regulation, the term "Department" refers to the "West Virginia Department of Corrections." 7A W. Va.C.S.R. § 92–1–2(f) (1983). Despite the fact that the official name of this entity is the West Virginia Department of Military Affairs and Public Safety, Division of Corrections, *see* W. Va.Code § 5F–2–1(e)(7) (1997) (Repl.Vol.2000), references to this agency frequently use the words Department and Division interchangeably. *See, e.g., State ex rel. White v. Parsons,* 199 W.Va. 1, 9, 483 S.E.2d 1, 9 (1996); *Rowe v. West Virginia Dep't of Corrections,* 170 W.Va. 230, 231, 292 S.E.2d 650, 651 (1982).

131 (4th Cir.1977) (per curiam) (suggesting, in case of multiple convictions and sentences, that execution of parole violator's warrant within maximum term of first underlying sentence satisfies notions of fundamental fairness). Furthermore, it also appears that the parole revocation procedure contemplates both a preliminary hearing and a final parole revocation hearing. In the proceedings underlying the instant petition, however, Valentine waived his right to such a preliminary hearing on the day that he received the notice of the charges against him, February 11, 1999. Therefore, in the absence of a preliminary hearing, we will proceed to consider whether the Parole Board timely conducted Valentine's final parole revocation hearing.

■ First, we note that none of the enumerated exceptions which, if applicable, would toll the running of the thirty-five day period, are relevant to the facts we have before us. *See* 7A W. Va.C.S.R. § 92–1–11.1(b)(1–4). The parties have presented no evidence to indicate that any continuances were requested by counsel, nor did the conduct which formed the basis of Valentine's parole revocation hearing result in criminal charges. Furthermore, the parties have not alleged that Valentine either absented himself from West Virginia or that he absconded from custody or supervision in February, 1999. *See id.* Finding these exceptions to be inapplicable, we next must ascertain the time within which the Parole Board was required to commence Valentine's revocation hearing.

Pursuant to § 92–1–11.1(b), the Parole Board was required to convene a revocation hearing within thirty-five days of the earlier of Valentine's receipt of written notice of the charges against him or the date of his incarceration on such charges. On February 11, 1999, Valentine received written notice of the parole violation charges levied against him, but he was incarcerated pending the resolution of the revocation proceedings on February 10, 1999. Therefore, using the earlier of these dates, February 10, 1999, the Parole Board was required to commence its final

revocation hearing no later than thirty-five days hence, or by March 17, 1999.

Alternatively, § 92–1–11.2(b) directed the Parole Board to conduct the final revocation hearing within thirty days of either the date of the preliminary hearing or the date of the waiver of said hearing. Thirty days from Valentine's waiver of his preliminary hearing, which waiver was executed on February 11, 1999, results in a final hearing date of March 15, 1999.

■ In any event, it is quite apparent that the final revocation hearing in the instant proceeding was untimely and that it was not "prompt" as contemplated by W. Va.Code § 62–12–19. The Parole Board conducted Valentine's final revocation hearing on March 25, 1999, a date which exceeds the § 92–1–11.1(b) criteria by eight days and which surpasses the § 92–1–11.2(b) deadline by ten days. Given that an individual's eligibility for good time credit is a substantive right,[15] we hold accordingly that a parolee is entitled to receive good time credit, in accordance with W. Va.Code § 28–5–27 (1984) (Repl.Vol.1999), when: (1) a parolee is detained pending a final parole revocation hearing; (2) the West Virginia Parole Board fails to conduct said hearing within the time limits contained in 7A W. Va.C.S.R. §§ 92–1–11.1(b) and 92–1–11.2(b) (1983); (3) no applicable exceptions apply to enlarge the enumerated time limits; and (4) the parolee's conduct while detained warrants good time credit. Such good time credit is limited to that period of the parolee's detention necessitated by the Parole Board's delay.

## IV.

## CONCLUSION

Because the Parole Board failed to abide by the enumerated time limits within which to hold Valentine's final revocation hearing, we conclude that, if his conduct so warranted, he was entitled to receive good time credit for the additional time he was detained in the Marion County Jail as a result of the Parole Board's delay. Therefore, we grant as moulded the requested writ of habeas corpus

---

**15.** Syl. pt. 7, in part, *Woodring v. Whyte,* 161    W.Va. 262, 242 S.E.2d 238 (1978).

and direct the D.O.C. to recalculate Valentine's release date in accordance with W. Va.Code § 28–5–27(h).[16]

Writ granted as moulded.

MAYNARD, Chief Justice, dissenting:

I dissent because I believe the petitioner was accorded a prompt parole revocation hearing under W.Va.Code § 62–12–19 (1998) and, even if he were not, awarding him good time credit is not the proper remedy.

In the instant case, the petitioner's parole revocation hearing was held eight days after the expiration of the 35–day period set forth in 7A W.Va.C.S.R. § 92–1–11.1(b). Because parole revocation hearings must be conducted within the protections afforded by the state and federal constitutions, such hearings must be orderly, fair, and free of unreasonable, capricious, or arbitrary conduct. There is no evidence of arbitrary or capricious conduct by the parole board. Absent such evidence, I am unwilling to conclude that an additional eight day period between the petitioner's incarceration and the revocation hearing is, by law, unreasonable.

Second, in those instances where a parolee is incarcerated and is not given a prompt hearing, I believe the proper remedy is to seek a writ of mandamus to compel a hearing. *See State ex rel. Carper v. W.Va. Parole Bd.*, 203 W.Va. 583, 509 S.E.2d 864 (1998)

(petitioner sought a writ of mandamus to compel the state parole board to review him for parole on an annual basis). Because such a remedy exists, it is not necessary for this Court to create from whole cloth a right to good time credit when a revocation hearing is not promptly held.

Under our law, "[a] prisoner is not entitled to good time credits while on parole." Syllabus Point 11, *Woodring v. Whyte*, 161 W.Va. 262, 242 S.E.2d 238 (1978). Also, W.Va.Code § 28–5–27(c) (1984) says that "[n]o inmate may be granted any good time for time served either on parole or bond or in any other status whereby he or she is not physically incarcerated." In this case, the parole status of the petitioner had not yet been revoked so, according to our law, he is not entitled to good time credits. This should have settled the issue.

Because the petitioner received a prompt revocation hearing and is not entitled to good time credits while on parole, I would have denied the petitioner the relief which he seeks. Accordingly, I dissent.

---

**16.** W. Va.Code § 28–5–27(h) directs the D.O.C. to provide inmates with a revised statement of their minimum discharge date whenever they receive additions to or deductions from their good time credit.