**Donald W. DOWDY**

v.

**Gene M. JOHNSON, Warden et al.**

**Civ. A. No. 80–0664–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

25 March 1981.

East Baton Rouge Parrish Prison, Baton Rouge, La., pro se.

Eric K. G. Fiske, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

Donald Wayne Dowdy, an inmate confined at the Powhatan Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983 (1970). The plaintiff alleges that certain Department of Corrections guidelines were violated when he was charged, tried, and convicted of the institutional offense of escape. The plaintiff's allegations of rule violations primarily concern time limits which the Department has itself set for bringing disciplinary charges against prisoners and for disposing of those charges.

The plaintiff acknowledges that he escaped from confinement at the Staunton Correctional Center on 25 February 1980. He was recaptured and on 29 May 1980 he was received at the Powhatan Correctional Center West Housing Unit. The plaintiff alleges that this unit houses escapees and parole violators exclusively.

The plaintiff states that on 23 June 1980 he was served with an institutional disciplinary charge for escape. He maintains that his constitutional rights were violated because Department of Corrections Guideline 861 (VI)(F) requires that an inmate be served with the charge by midnight of the working day following the incident.

Edith Richmond, the records custodian at the Powhatan Correctional Center, concedes in her sworn affidavit filed 17 September 1980 that the plaintiff was charged with a disciplinary offense on 23 June 1980. She maintains, however, that sufficient information to support a charge of escape was not received from Staunton Correctional Center until that date. In response, the plaintiff points out that immediately upon his arrival at Powhatan Correctional Center on 29 May 1980, he was placed in escapee status. He submits that Edith Richmond and the rest of the Powhatan administration knew of facts sufficient to support the charge well before 23 June 1980. The Court agrees with the plaintiff on this point. The only reasonable explanation for the delay in serving the disciplinary charge is bureaucratic inefficiency.

The plaintiff states further that upon service of the charge, a disciplinary hearing was scheduled for 26 June 1980. This hearing was continued until 3 July 1980, however. The plaintiff has submitted affidavits from other inmates who were also to receive disciplinary hearings on 26 June for escape. These affidavits show that all the hearings were continued because a question arose as to whether the charges had been timely served. One inmate, Paul Kelly, states that the disciplinary panel indicated on 26 June that it would seek an opinion from the Attorney General's Office on the question.

Marjorie Murphy, a law student at the University of Virginia and a member of the Post-Conviction Assistance Project, states in her sworn affidavit filed 16 October 1980 that she came to Powhatan on 3 July to represent the plaintiff at his hearing, but she was told that the plaintiff was not confined at the facility at that time. It appears from the 17 September 1980 affidavit of Edith Richmond that the plaintiff

was transferred from Powhatan on 1 July for a court appearance and was returned on 7 July.

The plaintiff's hearing was again rescheduled, this time for 10 July. On that date, the plaintiff was found to have committed the offense charged, and as a result he lost all of his accumulated good time. At the 10 July hearing, the plaintiff was represented by Miss Murphy.

With respect to the continuances, the plaintiff contends that his constitutional rights were violated because (1) certain time limits were not met and (2) he did not receive written notice of the cause and the duration of the continuance.

Department of Corrections Guideline 861(VI)(G)(8) provides that adjustment committee hearings may be postponed for a maximum of fifteen days from the date on which the inmate is served with a written copy of the offenses, except as provided in Guideline 861(VI)(G)(2), (3), (5), (6), (7), and (8). Guideline 861(VI)(G)(7) states that a hearing may be postponed beyond the fifteen-day limit in the event of a "temporary transfer of the accused inmate for a court appearance." However, the hearing must then be held within two working days of the prisoner's return to the institution.

In this case, under the guidelines, and assuming for the moment that service of the charge on 23 June was appropriate, the hearing should have been conducted on 8 or 9 July. The uncertainty arises because the plaintiff returned from his court appearance on 7 July, the fifteen-day time limit expired on 8 July, and there is no way to tell from the record whether, under these circumstances, the prison administration would be allowed the two-day extension provided for in Guideline 861(VI)(G)(7). It thus appears that under its own rules, the prison administration was either one or two days late in providing a hearing.

The plaintiff also complains that he did not receive written notice of the continuances, as required under Guideline 861(VI)(G)(8). The record shows, however, that the plaintiff and the plaintiff's representative, Miss Murphy, were advised of the

continuance entered on 26 June. The plaintiff, moreover, surely knew the reason why the hearing was not held on 3 July.

■ The Court has reviewed all of the facts recited above in search of a constitutional violation, and it finds none. It is clear from the decision in *United States v. Caceres*, 440 U.S. 741, 749, 99 S.Ct. 1465, 1470, 59 L.Ed.2d 733 (1979) that violations of agency guidelines do not necessarily give rise to a constitutional cause of action. The Caceres decision was analyzed in detail in a prior opinion of this Court, *Kelly v. Cooper*, 502 F.Supp. 1371, 1374–1376 (E.D.Va.1980). The Court need not set forth again its reading of Caceres. It is sufficient for the purposes of this decision to list the three circumstances in which, according to the Caceres Court, a departure from agency guidelines may state a claim cognizable by a federal court:

1. When compliance with the agency regulation is mandated by the Constitution or federal law;

2. When an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency; or,

3. When the violation of the agency regulation arguably amounts to a denial of equal protection.

440 U.S. at 749–753, 99 S.Ct. at 1470–72. Using the above list as a framework, the Court finds that the plaintiff has failed to state a claim under Section 1983.

The guidelines referred to by the plaintiff are not intended to secure and protect established constitutional rights, and compliance with the guidelines is thus not mandated by the Constitution or federal law. The plaintiff complains of the timing of the notice of the disciplinary charge and the hearing. However, the plaintiff has no constitutional right to receive notice of the disciplinary charge by the day following the incident; nor does the plaintiff have a right to a hearing within a specific period of time. The only reference in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41

L.Ed.2d 935 (1974) to the timing of the notice and hearing is contained in the following passage:

We hold that written notice of the charges must be given to the disciplinary action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee.

Id. at 564, 94 S.Ct. at 2978. The Supreme Court has set as a minimum a 1-day period between the notice and the hearing. But the Court did not undertake to set a maximum time limit either for notice or for the hearing. Compliance with the Department of Corrections guidelines in this instance is thus not mandated by the Constitution or federal law.

With regard to the due process prong of the Caceres analysis, the plaintiff states that he expected, after the time limits had run, that he would not be convicted of the disciplinary offense or lose his accumulated good time. However, he does not allege that he was at all prejudiced in the presentation of his defense to the charge. Because the time limits set under the department guidelines are not constitutionally mandated, the Court can only inquire (1) whether the delay in bringing the charge or holding the hearing was of such duration as to constitute a denial of due process; or (2) whether the plaintiff relied on the guidelines to his detriment by foregoing an otherwise available opportunity to prepare a defense.

The Court finds in this case that the delay, in and of itself, was not of such duration as to constitute a denial of due process. The period between the plaintiff's arrival at the West Housing Unit and his hearing was only six weeks.

The Court further finds that the plaintiff has failed to show the type of detrimental reliance which might entitle him to relief under the due process prong of Caceres. The plaintiff presented no defense at the hearing and it has not been shown that a substantial defense was available to him at any earlier time.

Finally, the Caceres decision requires this Court to consider whether the departure from the agency guidelines "arguably amount[ed] to a denial of equal protection," 440 U.S. at 752, 99 S.Ct. at 1472. The Court finds, however, that no claim has been made or reasonably could be made that, had the plaintiff received his hearing at an earlier time, he would have prevailed. As stated above, at no time has the plaintiff contended that he did not, in fact, escape from the Staunton Correctional Center. Since the plaintiff has not shown that he possibly could have been found innocent of the disciplinary charge, "any inconsistency of which [he] might complain is purely one of form." Id. The delay to which the plaintiff objects could not, therefore, have had any impact on the presentation of the defense.

In his rebuttal pleading filed on 1 December 1980, the plaintiff argues that the Institutional Adjustment Committee discriminates against inmates that are charged with escape. He maintains that the Committee overlooks minor deviations from the guidelines in order to avoid dismissing escape charges. According to the plaintiff, at the same time, the IAC dismisses charges for other types of infractions based on minor departures from the disciplinary procedural rules. The plaintiff presents as an example the case of a fellow prisoner, Carl Edwards. The record indicates that a disciplinary charge brought against Edwards was dismissed because a notice of continuance was not served upon Edwards as required under the guidelines. A review of the record, however, does not disclose the disciplinary offense which Edwards was alleged to have committed.

The plaintiff's equal protection claim will be dismissed. The plaintiff's proof is clearly insufficient to establish a pattern or practice of disparate treatment. Furthermore, the plaintiff has presented only a conclusory allegation that the allegedly differing treatment results from discriminatory intent. This is insufficient to state a cause of action under Section 1983.

For the reasons stated above, this complaint will be dismissed.

Should the plaintiff desire to appeal this judgment, he must file a written notice of appeal with the Clerk of this Court within 30 days of the date of the judgment.

An appropriate order shall issue.