573 S.E.2d 1

STATE of West Virginia ex rel. Michael A. WILLIAMS, Brett McClaskie, Gregory Mitchell, Dwight Warren, and John Thacker, Petitioners,

v.

DEPARTMENT OF MILITARY AFFAIRS AND PUBLIC SAFETY, DIVISION OF CORRECTIONS, James E. Rubenstein, Commissioner, and William S. Haines, Warden, Huttonsville Correctional Center, Respondents.

No. 30407.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 4, 2002.

Decided Oct. 11, 2002.

Jason E. Huber, Esq., Forman & Crane, L.C., Charleston, for Petitioners.

Darrell V. McGraw, Jr., Esq., Attorney General, Barry L. Koerber, Esq., Assistant Attorney General, Charleston, for Respondents.

DAVIS, Chief Justice.

The petitioners, Michael A. Williams, Brett McClaskie, Gregory Mitchell, Dwight Warren, and John Thacker [hereinafter collectively referred to as "Williams" or "the petitioners"],[1] individuals incarcerated at Huttonsville Correctional Center [hereinafter referred to as "HCC"], seek relief

---

**1.** Petitioner Michael A. Williams discharged his sentence and was released from Huttonsville Correctional Center in June, 2002. The remaining petitioners continue to be incarcerated at that facility. Despite Williams' release from confinement, we will nevertheless refer to the petitioners collectively as "Williams" to maintain consistency with the original pleadings in this case. *See* Section I, *infra.*

through the extraordinary remedy of mandamus[2] for alleged injustices committed by Division of Corrections officials[3] at its Huttonsville facility. Specifically, the petitioners challenge HCC's procedures for (1) restoring good time credit that has been revoked in conjunction with an inmate's disciplinary violation and (2) notifying prisoners of alleged disciplinary violations. Upon review of the parties' briefs, supporting arguments, and pertinent authorities, we grant as moulded the requested writ of mandamus. In sum, W. Va.Code § 28–5–27(f) (1984) (Repl.Vol.2001) grants to the Commissioner of Corrections the sole authority to promulgate disciplinary rules for the correctional institutions under his/her control, which authority includes the power to approve requests to restore an inmate's previously forfeited good time credit. Additionally, the restoration of an inmate's previously forfeited good time credit should be accomplished on a case-by-case basis in accordance with W. Va.Code § 28–5–27(f) (1984) (Repl.Vol. 2001) and any policies or procedures implemented by the Commissioner of Corrections thereunder. Finally, notice of alleged disciplinary violations must be provided to the charged inmate within a reasonable time of the occurrence giving rise to such disciplinary proceedings and should be stated with such specificity as to permit the inmate to understand the nature of the charge(s) against him/her.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In August, 1999, Petitioner Williams was transferred to HCC after committing assault and battery at the Huntington Work Release Center.[4] As a result of this offense, Williams lost one year of good time credit. Subsequently, in March, 2000, Williams was disciplined for fighting with another HCC inmate. Following these infractions and the resultant discipline therefor,[5] Williams filed, in this Court, pro se petitions for writs of mandamus, on August 28, 2001, and habeas corpus ad subjiciendum, on September 19, 2001.[6] In his first petition, Williams alleges that he has been denied rehabilitative services during his incarceration and that he has been improperly placed on restrictive status. The subject of his second petition concerns the notice afforded to inmates when they are charged

---

**2.** As noted in Section I, *infra,* Williams has filed writs of both mandamus and habeas corpus ad subjiciendum in this Court. While this Opinion addresses only those issues originally presented in Williams' habeas corpus petition, the nature of the relief sought sounds in mandamus, rather than habeas corpus. *See, e.g., State ex rel. Anstey v. Davis,* 203 W.Va. 538, 552, 509 S.E.2d 579, 593 (1998) (Davis, C.J., concurring) ("In the past, this Court has allowed 'conditions' of incarceration to form the basis for a habeas corpus proceeding. However, we previously have addressed conditions of incarceration in relation to a habeas petition, only in the context of inmates seeking *actual release* from confinement due to challenged prison conditions." (citation omitted)); Syl. pt. 1, *State ex rel. Pingley v. Coiner,* 155 W.Va. 591, 186 S.E.2d 220 (1972) ("Habeas corpus lies to secure relief from conditions of imprisonment which constitute cruel and unusual punishment in violation of the provisions of Article III, Section 5, of the Constitution of West Virginia and of the Eighth Amendment to the Constitution of the United States."). Accordingly, we will henceforth treat this matter as a petition for writ of mandamus.

**3.** In particular, the respondents to this proceeding are the Department of Military Affairs and Public Safety, Division of Corrections; its Com-

missioner, James E. Rubenstein; and the Warden of Huttonsville Correctional Center, William S. Haines. For ease of reference, all of these respondents will hereinafter be collectively referred to as "the respondents," except where otherwise noted.

**4.** Williams' initial incarceration resulted from his breaking and entering of a rental warehouse in Mercer County, West Virginia, which crime was committed while Williams was on parole for a prior offense. While serving the sentence imposed therefor, he was placed on work release, whereupon he committed the above-referenced assault and battery, which resulted in his transfer to HCC.

**5.** Additional facts concerning the precise nature of Williams' allegations against HCC, as well as those of the other petitioners, will be incorporated into the legal discussion of those issues in Section III, *infra.*

**6.** Williams also has filed pro se petitions for mandamus and habeas corpus relief in the Circuit Court of Randolph County. Those petitions complain of different perceived injustices by HCC and its staff and are not related to the instant proceeding.

with violations of disciplinary rules. By order of this Court, entered February 21, 2002, and clarified April 1, 2002, a rule to show cause was issued

> direct[ing the parties] to address only the issues contained in petitioner's September 19, 2001 filing of a writ of habeas corpus, which relates to the magistrate system within the institution and the procedures by which the magistrate system interprets the Division of Corrections' policy directives.

Thereafter, this Court appointed counsel for Williams, and permitted additional inmates [7] who have been similarly aggrieved by HCC's policies and procedures to join in his petition for extraordinary relief.

## II.

### STANDARD FOR ISSUANCE OF WRIT

 The relief sought by the petitioners herein is a writ for the extraordinary remedy of mandamus.[8] Typically, " '[m]andamus lies to require the discharge by a public officer of a nondiscretionary duty.' Point 3 Syllabus, *State ex rel. Greenbrier County Airport Authority v. Hanna*, 151 W.Va. 479[, 153 S.E.2d 284 (1967)]." Syl. pt. 1, *State ex rel. West Virginia Hous. Dev. Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545 (1969). *Accord* Syl. pt. 3, *Allen v. State Human Rights Comm'n*, 174 W.Va. 139, 324 S.E.2d 99 (1984) (" 'A peremptory writ of mandamus will issue to require the discharge by a public official of a non-discretionary duty.' Syl. pt. 4, *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612 (1939)."). Provided the case is appropriate for the consideration of such relief,

> [a] writ of mandamus will issue when three elements coexist: (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. pt. 5, *Parks v. Board of Review of West Virginia Dep't of Employment Sec.*, 188 W.Va. 447, 425 S.E.2d 123 (1992). With

these standards in mind, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

On petition to this Court, Williams seeks relief from certain policies of HCC concerning the restoration of good time credit and the timeliness and sufficiency of notice to inmates regarding disciplinary violations they are alleged to have committed. We will consider each of these complaints in turn.

### A. Restoration of Good Time Credit

The petitioners first seek relief from HCC's procedures regarding the restoration of good time credit revoked as a result of a disciplinary violation. Specifically, they allege that HCC currently has in place a policy whereby inmates are not permitted to apply for the restoration of such credits until they are within two years of their date of discharge. Secondly, the petitioners claim that inmates who have committed Class I rule violations have been denied the restoration of their good time solely on the basis of their commission of such offenses.

 "The provisions of West Virginia Code § 28-5-27 (1992) solely govern the accumulation of 'good time' for inmates sentenced to the West Virginia State Penitentiary." Syl. pt. 3, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997). *See also* W. Va.Code § 28-5-27(k) (1984) (Repl.Vol.2001) ("There shall be no grants or accumulations of good time or credit to any inmate now or hereafter serving a sentence in the custody of the department of corrections except in the manner provided in this section."). In pertinent part, this statute directs that

> (a) All adult inmates now in the custody of the commissioner of corrections, or hereafter committed to the custody of the commissioner of corrections ... shall be granted commutation from their sentences for good conduct in accordance with this section.

---

7. The other petitioning inmates are Brett McClaskie, Gregory Mitchell, Dwight Warren, and John Thacker. *See supra* note 1.

8. *See supra* note 2.

(b) Such commutation of sentence, hereinafter called "good time," shall be deducted from the maximum term of indeterminate sentences or from the fixed term of determinate sentences.

(c) Each inmate committed to the custody of the commissioner of corrections and incarcerated in a penal facility pursuant to such commitment shall be granted one day good time for each day he or she is incarcerated . . . .

W. Va.Code § 28–5–27 (1984) (Repl.Vol. 2001).

Of particular relevance to the instant proceeding is W. Va.Code § 28–5–27(f), which permits the revocation of an inmate's accrued good time credits if he/she commits a disciplinary violation during his/her incarceration:

(f) The commissioner of corrections shall promulgate separate disciplinary rules for each institution under his control in which adult felons are incarcerated, which rules shall describe acts which inmates are prohibited from committing, procedures for charging individual inmates for violation of such rules and for determining the guilt or innocence of inmates charged with such violations and the sanctions which may be imposed for such violations. A copy of such rules shall be given to each inmate. *For each such violation, by an inmate so sanctioned, any part or all of the good time which has been granted to such inmate pursuant to this section may be forfeited and revoked by the warden or superintendent of the institution in which the violation occurred. The warden or superintendent, when appropriate and with approval of the commissioner, may restore any good time so forfeited.*

W. Va.Code § 28–5–27(f) (emphasis added). It is from the various policies adopted and implemented by HCC in conjunction with this statutory language that the petitioners seek relief through mandamus.

■ **1. Request for good time restoration limited to two-year period preceding discharge date.** The petitioners first complain that respondent Haines, Warden of HCC, impermissibly prohibits inmates, who have lost good time credit following their commission of disciplinary violations, from

applying for the restoration of such good time credit until the two-year period immediately preceding their discharge date. Although there is no explicit written policy to this effect, petitioner Gregory Mitchell contends that he nevertheless received written notice from an HCC unit manager, dated June 4, 2002, indicating that Warden Haines would not approve any good time contract for the restoration of lost good time credits "if [the requesting inmate is] more than 2 years from discharge."

This practice, the petitioners claim, violates W. Va.Code § 28–5–27 and the Commissioner's own Policy Directive implementing the same. *See* West Virginia Division of Corrections Policy Directive No. 151.02, §§ V.E., V.F.1–5 (May 15, 2001). While § 28–5–27(f) permits the Commissioner of the Division of Corrections to establish good time credit policies for each state facility, the petitioners complain that the practice adopted by HCC was not approved by the Commissioner as required by statute. They also assert that such a practice effectively usurps all good time credits in excess of two years that have been accumulated by the affected inmate.

The respondents reply that Warden Haines reviews each inmate's request for the restoration of previously lost good time credits on a case-by-case basis. However, in light of the petitioners' challenge herein, Warden Haines represents that he will no longer require an inmate, who has more than two years' lost good time, to be within the two-year period immediately preceding his/her discharge date before permitting him/her to request its restoration.

■ Given Warden Haines' acquiescence in the petitioners' demands, this issue has technically become moot. Nevertheless, because this matter is both capable of repetition at another of this State's many correctional facilities and because its very existence suggests confusion as to the law governing the restoration of previously revoked good time credits, we will proceed to consider the merits of the parties' arguments. *See, e.g.,* Syl. pt. 1, *Israel by Israel v. West Virginia Secondary Schs. Activities Comm'n,* 182

W.Va. 454, 388 S.E.2d 480 (1989) ("Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.").

■ As has been aptly noted by the petitioners, the Legislature specifically grants authority to the Commissioner of Corrections to "promulgate separate disciplinary rules for each institution under his control" to establish internal disciplinary rules for each facility and to govern inmate conduct in accordance therewith. *See* W. Va.Code § 28–5–27(f). Once an inmate has committed a disciplinary violation, "the warden or superintendent of the institution in which the violation occurred" may revoke "any part or all of the good time" which he/she previously has been granted. *Id.* "[W]hen appropriate and *with approval of the commissioner,* [the warden or superintendent] may restore any good time so forfeited." *Id.* (emphasis added).

Pursuant to the authority granted by W. Va.Code § 28–5–27(f), the Commissioner of Corrections has implemented Policy Directive No. 151.02, which provides, in relevant part, the procedure to be followed for the revocation and restoration of good time credits:

E. Good time may be forfeited and revoked by the institution/facility/center Warden/Administrator according to the rules of discipline promulgated and approved by the Commissioner of Corrections. The inmate will be notified in writing within thirty (30) days of any change of the minimum discharge date resulting from this forfeiture and revocation.

F. Good time forfeited as delineated in Section V, E of this Policy Directive

may be restored upon the written recommendation of the Warden/Administrator, and with the approval of the Commissioner or his/her designated representative(s) under the following guidelines:

1. The inmate shall be free of disciplinary violations for one (1) year prior to any recommendation for restoration of good time.

2. The Warden/Administrator of the institution/facility/center where the inmate is housed shall make the recommendation to the Commissioner for good time restoration.

3. The inmate being recommended for restoration of good time shall enter into a contractual agreement, with terms and conditions to be determined by the Warden/Administrator of the confining facility. . . .

4. If, during the term of the contract, the inmate is transferred from the institution/facility/center where the contract was initiated and assigned to another institution/facility/center, the contract shall remain in effect.

5. Upon fulfillment of the conditions of the good time contract, it is the responsibility of the Warden/Administrator of the inmate's confining institution/facility/center to:

a. Credit restored good time to the inmate's sentence.

b. Notify the Central and institution/facility/center Records Offices of the change.

c. Notify the inmate in writing within thirty (30) days of the change in the minimum discharge date, resulting from the restoration of the forfeited good time.

West Virginia Division of Corrections Policy Directive No. 151.02, §§ V.E., V.F.1–5 (May 15, 2001).

■ Despite these explicit procedures for the restoration of lost good time, we can find no authority for Warden Haines' imposition of an additional prerequisite that the aggrieved inmate be within two years of dis-

charging his/her sentence before he/she may request that previously lost good time credits be restored. On the contrary, we are mindful of the Commissioner's sole authority to promulgate institutional disciplinary procedures and to approve the restoration of an inmate's previously forfeited good time credits. *See* W. Va.Code § 28–5–27(f). The governing statutory language likewise does not extend this permission to lesser-ranking corrections officials. *See id.* Therefore, we hold that, pursuant to W. Va.Code § 28–5–27(f) (1984) (Repl.Vol.2001), the Commissioner of Corrections possesses the sole authority to promulgate disciplinary rules for the correctional institutions under his/her control, which authority includes the power to approve requests to restore an inmate's previously forfeited good time credit.

■ Neither has respondent Haines offered nor can we discern any rational basis for this arbitrary temporal requirement. We repeatedly have held that "[c]ommutation of time for good conduct is a right created by the Legislature." Syl. pt. 8, in part, *Woodring v. Whyte,* 161 W.Va. 262, 242 S.E.2d 238 (1978). *Accord State ex rel. Valentine v. Watkins,* 208 W.Va. 26, 32, 537 S.E.2d 647, 653 (2000). *See also Adkins v. Bordenkircher,* 164 W.Va. 292, 298, 262 S.E.2d 885, 888 (1980) (observing that statutory creation of good time "confers a substantive right" (internal quotations and citation omitted)). As such, "[g]ood time credit is a valuable liberty interest protected by the due process clause, W. Va. Const. art. III § 10." Syl. pt. 2, *State ex rel. Gillespie v. Kendrick,* 164 W.Va. 599, 265 S.E.2d 537 (1980). *Accord* Syl. pt. 3, *State ex rel. Goff v. Merrifield,* 191 W.Va. 473, 446 S.E.2d 695 (1994); Syl. pt. 2, *State ex rel. Coombs v. Barnette,* 179 W.Va. 347, 368 S.E.2d 717 (1988). For this reason, then, such an interest must be rationally based, *Woodring v. Whyte,* 161 W.Va. at 274, 242 S.E.2d at 245, and be protected against the arbitrary abrogation thereof by the state. *See Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974) ("But the State having created the right to good time . . . the prisoner's interest has real

substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."); *State ex rel. Gillespie v. Kendrick,* 164 W.Va. at 604, 265 S.E.2d at 540 ("The touchstone of due process is protection of the individual against arbitrary action of government[.]" (citing *Dent v. West Virginia,* 129 U.S. 114, 123, 9 S.Ct. 231, 234, 32 L.Ed. 623, 626 (1889)) (internal quotations and additional citation omitted)).

■ While we acknowledge that the imposition of such a temporal limitation may be appropriate in some circumstances, the respondents have failed to demonstrate the necessity of applying such a restriction to all good time restoration requests. Without such a showing, we are left with the impression that such a practice is arbitrary and capricious and without a rational basis in the governing law. Accordingly, we hold that the restoration of an inmate's previously forfeited good time credit should be accomplished on a case-by-case basis in accordance with W. Va.Code § 28–5–27(f) (1984) (Repl. Vol.2001) and any policies or procedures implemented by the Commissioner of Corrections thereunder. Finding no authority for Warden Haines' limitation of restoration requests or rational basis therefor, we grant as moulded the mandamus relief requested in this regard.

■ **2. Cessation of prior unlawful policy vis-a-vis Class I offenses.** For their second contention, the petitioners claim that HCC has acted improperly by failing to restore good time credits to petitioners Michael Williams, John Thacker, and Dwight Warren, who had earlier lost their good time credits pursuant to a memorandum from the Commissioner of Corrections, which has since been rescinded. On September 1, 2000, the former Commissioner of Corrections issued a memorandum prohibiting the restoration of good time credits to inmates found guilty of committing a Class I rule violation [9] between

---

**9.** Class I offenses are defined as "[t]hose rule violations that threaten life or limb, which seri-

ously breach facility security and/or public safety or which are felonies." West Virginia Division

September 5, 1997, and February 29, 2000. The current Corrections Commissioner, respondent Rubenstein, rescinded this policy, effective April 18, 2001, stating that "[r]estoration of good time for this period shall be given the same consideration as is for lost good time regarding Class I rule violations for any other period of time." Nevertheless, the above-named petitioners aver that their requests for restoration of good time lost under the prior policy have been denied.

The respondents reply that the petitioners' requests for restoration of good time lost pursuant to the now-rescinded memorandum were made before the Commissioner had withdrawn this prior policy. They represent further that if the aggrieved petitioners reapplied for the restoration of their lost good time, such requests would be reviewed on a case-by-case basis, with no distinction made between Class I and other rule violations in accordance with the Commissioner's April 18, 2001, corrective memorandum.

Upon reviewing the supporting documentation submitted by the parties, we find that the respondents have correctly stated the current procedural posture of this complaint. It appears from the petitioners' appendix of documents that petitioner Thacker filed his grievance requesting restoration of good time lost under the prior policy on January 26, 2001, nearly three months before the corrective memorandum was issued. Petitioner Williams, who has since discharged his sentence, filed his restoration of lost good time grievance on March 12, 2001, approximately one and one-half months before Commissioner Rubenstein's policy revision. It is not clear, however, when petitioner Warren requested the restoration of his lost good time.

At this juncture, we need not comment on the legality of the Commissioner's prior policy since that practice has been rescinded. We reiterate only that the revocation and restoration of good time must be accomplished in accordance with W. Va.Code § 28–5–27 and any policy directives issued by the Commissioner in accordance therewith. *Accord* W. Va.Code § 28–5–27(k); Syl. pt. 3,

*State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293. In light of the Commissioner's current policy according the same consideration to requests for restoration of lost good time regardless of the class of rule violation upon which the revocation was based, it follows that an inmate's request for restoration of lost good time also should not distinguish between the different types of rule violations precipitating such revocation. *See* West Virginia Division of Corrections Policy Directive No. 151.02, § V.F.1–5 (outlining procedure for restoration of lost good time credits and making no distinction among classes of disciplinary violations underlying such restoration requests). Therefore, to the extent that the aggrieved petitioners' requests for restoration of good time revoked under the Commissioner's prior policy have not previously been disposed of, they should be reconsidered on a case-by-case basis under the Commissioner's current corrective memorandum.

### B. Notice of Alleged Disciplinary Violations

The second issue raised by the petitioners concerns HCC's procedures for notifying inmates that they have been charged with a disciplinary rule violation. Specifically, they claim that once disciplinary proceedings have been instituted against an inmate, such inmate is not provided with notice of the charges in a timely manner. The petitioners further contend that once an inmate receives a formal statement of the charges against him/her, the description of the alleged disciplinary violation lacks sufficient specificity to permit him/her to respond to and defend against such allegations. For their part, the respondents reply that constitutional standards of due process do not require notice to inmates of disciplinary rule violations be provided within a certain amount of time or that the description of the charges satisfy a particular level of specificity. Moreover, the respondents submit that none of the aggrieved petitioners have demonstrated that the notices they received were so defective either temporally or factually so as to have preju-

of Corrections Policy Directive No. 325.00, § V.A.1 (July 1, 2001). *See also Crain v. Bordenkircher*, 176 W.Va. 338, 346–47, 342 S.E.2d 422,

431 (1986) (recognizing Class I to be the "most severe" category of disciplinary rule violations).

diced their defense against their respective charges of misconduct.

As noted above, W. Va.Code § 28–5–27(f) authorizes the Commissioner of Corrections to

> promulgate separate disciplinary rules for each institution under his control in which adult felons are incarcerated, which rules shall describe acts which inmates are prohibited from committing, procedures for charging individual inmates for violation of such rules and for determining the guilt or innocence of inmates charged with such violations and the sanctions which may be imposed for such violations.

In accordance with such authority, the Commissioner has adopted Policy Directive No. 325.00 which delineates the procedures to be followed at HCC when an inmate violates a disciplinary rule. *See generally* West Virginia Division of Corrections Policy Directive No. 325.00 (July 1, 2001). Of specific relevance to the instant proceeding are the policies governing the reporting of a rule violation and the subsequent notice of such charge to the offending inmate.

Once a corrections official observes a disciplinary violation, he/she is required to complete an incident report detailing the nature and circumstances of the incident:

> a. ***Incident Reports:*** Any employee witnessing or determining the occurrence of a rule violation pursuant to this directive shall complete an Incident Report as soon as possible. *These reports will fully describe the date, time, location, individuals present and all other pertinent details regarding the alleged violation.*
>
> (1) Information regarding the identity of confidential inmate informants shall be deleted.
>
> (2) All Incident Reports shall be submitted to the Shift Supervisor, except Work Release Centers who shall submit to the Chief Correctional Officer/designee.
>
> (3) When necessary, an appropriate investigation of the alleged rule violation must commence within twenty-four (24) hours of the time the violation is reported and must be completed without unreasonable delay, unless there are exceptional circumstances for delaying the investigation.
>
> (4) The Shift Commander or Work Release Center Chief Correctional Officer shall provide the appropriate Unit Manager any Incident Report alleging a Class III rule violation. The Unit Manager will assess the Incident Report and elect to either dispose of the matter pursuant to policy governing the Unit Disciplinary Committee or return it to the Shift Commander/Chief Correctional Officer for disposition.

West Virginia Division of Corrections Policy Directive No. 325.00, § V.B.9.a (July 1, 2001) (emphasis added). Following the submission of the aforementioned incident report, a decision is made whether to formally charge the offending inmate. If a formal charge is levied, further procedural guidelines dictate its subsequent disposition.

> The Chief Correctional Officer/Shift Commander/designee will review staff Incident Reports and approve or disapprove charging an inmate with a violation pursuant to this directive, except for those Class III violations to be disposed of per the Unit Disciplinary Committee.
>
> a. In cases involving confidential inmate information, the Chief Correctional Officer/designee shall be the charging officer.
>
> b. The charging officer shall complete a violation report, attach all Incident Reports and forward originals to the Correctional Magistrate.
>
> c. Upon receipt or notification of the violation report, the Correctional Magistrate shall assign a date and time for a hearing in accordance with established policy on the charge and record, or have recorded, the date and time on the face of the violation report.
>
> d. In cases where the inmate was not segregated before the hearing, the hearing shall be held no later than

seven (7) days, excluding weekends and holidays, from the date the inmate was served with the violation report.

e. *The officer who serves the inmate with the copy of the violation report* shall thereafter complete the record of service on the original of the violation report.

West Virginia Division of Corrections Policy Directive No. 325.00, § V.B.10.a-e (emphasis added). After an inmate is formally charged with a disciplinary rule violation, then, he/she ultimately receives written notice of such charge when he/she receives a copy of the violation report. However, it is about this aspect of the disciplinary process that the petitioners complain, claiming that they do not receive timely notice of the charges levied against them and that the written statement of charges contained in the violation report does not adequately inform them of the disciplinary rule violation with which they have been charged.

■■■■ "It is obvious that prisoners relinquish certain rights when entering prison," *Tasker v. Griffith*, 160 W.Va. 739, 744, 238 S.E.2d 229, 232 (1977), but " '[i]t [also] has long been recognized in West Virginia that a prisoner retains basic due process guarantees despite incarceration.' " *Crain v. Bordenkircher*, 176 W.Va. 338, 345 n. 7, 342 S.E.2d 422, 430 n. 7 (1986) (quoting *Crain v. Bordenkircher*, Final Order (Marshall County Cir. Ct. June 21, 1983) (Recht, J.)) (citations omitted). *Accord Wolff v. McDonnell*, 418 U.S. at 555, 94 S.Ct. at 2974, 41 L.Ed.2d at 950 ("[A] prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime."); *Watson v. Whyte*, 162 W.Va. 26, 29, 245 S.E.2d 916, 918 (1978) ("[A]lthough it is true that restrictions upon liberty are implicit in the penal system, each must be imposed reluctantly; and new ones, with due process of law."). To this end, we have held that prison disciplinary proceedings must satisfy certain due process requirements:

Due process requirements for prison disciplinary hearings are:

(a) *Written notice to the inmate of the claimed violation;*

(b) Disclosure to him of the evidence against him;

(c) Opportunity to be heard and to present witnesses and documentary evidence;

(d) The right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) A neutral and detached hearing body;

(f) A written statement by the fact-finders of the evidence relied on and reasons for discipline; and

(g) The right to counsel if the state is represented by a lawyer.

Syl. pt. 1, *Harrah v. Leverette*, 165 W.Va. 665, 271 S.E.2d 322 (1980) (emphasis added). *Accord* Syl. pt. 1, *Nobles v. Duncil*, 202 W.Va. 523, 505 S.E.2d 442 (1998); *Crain v. Bordenkircher*, 176 W.Va. at 347 n. 11, 342 S.E.2d at 432 n. 11.

Despite this judicial recognition of an inmate's right to due process in disciplinary proceedings, the particular rights to timely and specific notice of such charges, which the petitioners assert in the case *sub judice*, have not yet been clarified by this Court. The difficulty attending such a definition can be attributed to the fact that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951 (citation omitted). Moreover, given this context, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.*

■■■■ " 'The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." ' " *Austin v. Wilkinson*, 189 F.Supp.2d 719, 747 (N.D.Ohio 2002) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965))). *But see Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D.Va.1981) (mem.) (finding that complaining inmate "has no constitu-

tional right to receive notice of the disciplinary charge [within a certain time] following the incident"). However, "[a] hearing is not 'meaningful' if a prisoner is given inadequate information about the basis of the charges against him." *Austin,* 189 F.Supp.2d at 747 (citation omitted). Similarly, "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff,* 418 U.S. at 564, 94 S.Ct. at 2978, 41 L.Ed.2d at 955 (citation omitted).

In the case *sub judice,* it appears that substantial delays have occurred between an inmate's commission of a disciplinary violation and his receipt of a notice formally charging him therewith. Furthermore, the specific violation reports delivered to petitioners Brett McClaskie, John Thacker, and Dwight Warren variously lack certain critical information regarding the exact nature of the offense committed, the precise date of the violation cited, and the identity of other individuals alleged to have participated in such misconduct. While we do not suggest that scrupulous attention to detail is necessary, it is apparent that basic details about the alleged violations that are required to be included in the initial incident report have been omitted from the formal charges contained in the subsequent violation report. *See* Policy Directive No. 325.00, § V.B.9.a. If the violation report served on the affected inmate has attached thereto copies of the incident report(s) upon which it is based, as does the violation report submitted to the institutional magistrate, it would appear that the notice of charges would be more factually adequate. *See* Policy Directive No. 325.00, § V.B.10.b. It is unclear, though, whether this practice is the one actually followed at HCC. Therefore, to the extent that the notice provided to the inmates herein charged with disciplinary violations does not satisfy the criteria enumerated above, we hold that notice of alleged disciplinary violations must be provided to the charged inmate within a reasonable time of the occurrence giving rise to such disciplinary proceedings and should be stated with such specificity as to permit the inmate to understand the nature of the charge(s) against him/her. Accordingly, we grant as moulded the petitioners' writ.

## IV.

### CONCLUSION

In summary, W. Va.Code § 28–5–27(f) (1984) (Repl.Vol.2001) grants to the Commissioner of Corrections the sole authority to promulgate disciplinary rules for the correctional institutions under his/her control, which authority includes the power to approve requests to restore an inmate's previously forfeited good time credit. Additionally, the restoration of an inmate's previously forfeited good time credit should be accomplished on a case-by-case basis in accordance with W. Va.Code § 28–5–27(f) (1984) (Repl. Vol.2001) and any policies or procedures implemented by the Commissioner of Corrections thereunder. Finally, notice of alleged disciplinary violations must be provided to the charged inmate within a reasonable time of the occurrence giving rise to such disciplinary proceedings and should be stated with such specificity as to permit the inmate to understand the nature of the charge(s) against him/her. According, the requested writ of mandamus is granted as moulded.

Writ Granted as Moulded.