584 S.E.2d 197

**STATE of West Virginia ex rel. Randy BAILEY, Petitioner,**

**v.**

**STATE of West Virginia, DIVISION OF CORRECTIONS; James Rubenstein, Commissioner; Mark A. Williamson, Warden; Denmar Correctional Center; and William S. Haines, Warden, Huttonsville Correctional Center, Respondents.**

**No. 31148.**

Supreme Court of Appeals of West Virginia.

Submitted April 9, 2003.

Decided June 19, 2003.

Jason E. Huber, Esq., Forman & Huber, Charleston, Christopher W. Cooper, Esq., Parsons, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Charles P. Houdyschell, Jr., Assistant Attorney General, Charleston, for Respondents.

PER CURIAM:

## I.

## FACTS

This case concerns the revocation of a prisoner's so-called "good time" for violations

of prison rules. As discussed, *infra*, West Virginia Code § 28–5–27 (1984) allows for a one day reduction in the time an inmate must serve for every day that inmate is incarcerated without disciplinary problems. Randy Bailey, petitioner, entered a plea of guilty to 3rd offense Driving Under the Influence in November 2001 in the Circuit Court of Cabell County. The court ordered Mr. Bailey to serve an indeterminate sentence of 1 to 3 years in prison. The Order of Commitment indicates that Mr. Bailey's conviction date was November 14, 2001, with an "effective sentence" date of November 13, 2001.

Pursuant to West Virginia Code § 28–5–27(g) (1984), prison authorities calculated Mr. Bailey's minimum discharge date to be May 13, 2003. That is, provided that Mr. Bailey did not have any discipline problems, he could earn one day good time for each day served and be released in eighteen months, rather than thirty-six months. After initial processing at the Mount Olive Correctional Complex in Fayette County, Mr. Bailey arrived on March 7, 2002 at the Denmar Correctional Center near Hillsboro in Pocahontas County.

Apparently Mr. Bailey did not adjust well to prison life, and he soon ran afoul of several prison rules. In his first three weeks at Denmar, Mr. Bailey allegedly created a disturbance and refused an order, both of which are violations of prison rules. Prison officials neither segregated Mr. Bailey nor did they deduct any good time for these two offenses, although they did revoke certain other privi-

leges. Within one week of these initial troubles, Mr. Bailey allegedly committed four additional rule violations, including allegedly threatening to "knock someone's head off," being disruptive and raising his voice in a loud and threatening manner, refusing an order to use a sign in/out log, and refusing an assigned work detail.

Prison authorities memorialized each of these last four offenses by preparing a document called a Violation Report, specifying the wrongful conduct and noting the particular rule allegedly violated by Mr. Bailey. On April 11, 2001, a "magistrate" [1] held a series of hearings on these offenses, and in each case the magistrate found Mr. Bailey guilty. The magistrate entered three separate orders, each of which reduced Mr. Bailey's good time by six months. By notice dated April 18, 2002, prison authorities informed Mr. Bailey that he had lost a total of 18 months of good time and that his new minimum discharge date would be November 13, 2004.

As of the date of the notice, April 18, 2002, Mr. Bailey had only served 156 days of his sentence, thus, pursuant to W. Va.Code § 28–5–27(c) (1984), Mr. Bailey had only earned, in his view, 156 days of good time. The magistrate's orders took away not only these 156 days, but also took away every *possible* day of good time that Mr. Bailey could ever earn under his original sentence. Thus the decision of the magistrate, if left standing, would require Mr. Bailey to serve the entirety of his 1 to 3 year sentence.[2] Mr.

---

1. W. Va.Code, §§ 31–20–8 and 9 (1998) create a Jail Facility Standards Commission and establish the duties and powers of that body. Pursuant to these code sections, Title 95, Series 1 of the Code of State Rules governs procedures for inmate rules and discipline. Specifically, section 16.15 states that "[d]isciplinary hearings of rule violations shall be conducted by an impartial person or panel of persons." 95 C.S.R. § 95–1–16.15 (1996). The term used by the parties for this "impartial person" is "magistrate," but this should not be confused with the magistrate court system created by W. Va. Const. Art. VIII § 10.

2. Mr. Bailey could potentially regain some of his good time through a so-called "contract." As we noted in a recent case, "[p]ursuant to the authority granted by W. Va.Code § 28–5–27(f), the Commissioner of Corrections has implemented Policy Directive No. 151.02, which provides, in

relevant part, the procedure to be followed for the revocation and restoration of good time credits." *State ex rel. Williams v. Dept. of Military Affairs*, 212 W.Va. 407, 413, 573 S.E.2d 1, 7 (2002).

Pursuant to this directive, inmates who have lost good time may enter into a contract with the Warden. If the inmate fulfills his or her obligations under the contract, he or she can regain some or all of the lost good time. However, an inmate's ability to participate in a contract is at the discretion of the Warden and the Commissioner. We believe that this is an important distinction, because under W. Va.Code § 28–5–27 (1984), the awarding of good time is not a discretionary act. Thus we do not believe that further discussion of this procedure is helpful to our decision in the instant case. For a thorough treatment of this issue, see *Williams, supra*.

Bailey subsequently attempted to appeal the magistrate's decision to the Commissioner of West Virginia Division of Corrections, Jim Rubenstein, to no avail. Mr. Bailey now petitions this Court for a writ of mandamus, ordering the respondents to return any good time days beyond the 156 days he had served as of the date of the notice. For the reasons set forth below, we grant the writ.

## II.

### STANDARD OF REVIEW

■ Petitioner Bailey seeks a writ of mandamus. As this Court has noted on many occasions:

> Before this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law.

Syl. pt. 3, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981); *accord, Parks v. Board of Review*, 188 W.Va. 447, 425 S.E.2d 123 (1992). We bear this standard in mind as we review the arguments of the parties.

## III.

### DISCUSSION

■ Petitioner Bailey argues that the respondents violated the relevant code provision by taking from him over 547 days of good time when he had only been incarcerated for 156 days. In a nutshell, Mr. Bailey argues that a day of good time does not exist until an inmate has served a day without incident, thus it should be impossible for prison authorities to take away more days of good time than an inmate has served.

■ First we note that good time "is designed to advance the goal of improved prison discipline." *Woods v. Whyte*, 162 W.Va. 157, 160, 247 S.E.2d 830, 832 (1978) (citation and footnote omitted); *accord, State ex rel. Valentine v. Watkins*, 208 W.Va. 26, 32, 537 S.E.2d 647, 653 (2000). Perhaps no place else are fairness and predictability more valued than within the walls of a prison. Those

incarcerated have little to look forward to, and little to motivate them, beyond a return to their normal, free lives on the outside. It is vitally important to the orderly operation of our prisons that inmates believe they will be rewarded for good behavior.

As this Court has stated: "[t]he purpose of awarding good time credit is to encourage not only rehabilitative efforts on the part of the inmate by encouraging the industrious and orderly, but also to aid prison discipline by rewarding the obedient." *Woodring v. Whyte*, 161 W.Va. 262, 275, 242 S.E.2d 238, 246 (1978); *accord, State ex rel. Valentine v. Watkins*, 208 W.Va. 26, 32, 537 S.E.2d 647, 653 (2000).

This Court has described good time as "a purely statutory creation" *Woods v. Whyte*, 162 W.Va. 157, 160, 247 S.E.2d 830, 832 (1978), and the Court has often explained that it is the legislative, and not judicial branch that gave life to this practice: "We repeatedly have held that '[c]ommutation of time for good conduct is a right created by the Legislature.' Syl. pt. 8, in part, *Woodring v. Whyte*, 161 W.Va. 262, 242 S.E.2d 238 (1978); *accord, State ex rel. Valentine v. Watkins*, 208 W.Va. 26, 32, 537 S.E.2d 647, 653 (2000)." *State ex rel. Williams v. Dept. of Military Affairs*, 212 W.Va. 407, 414, 573 S.E.2d 1, 8 (2002).

■ However, once created by the state and granted to inmates, good time may not be taken away arbitrarily. As this Court has long held: "Good time credit is a valuable liberty interest protected by the due process clause, W. Va. Const. art. III § 10." Syl. pt. 2, *State ex rel. Gillespie v. Kendrick*, 164 W.Va. 599, 265 S.E.2d 537 (1980). *Accord*, syl. pt. 3, *State ex rel. Goff v. Merrifield*, 191 W.Va. 473, 446 S.E.2d 695 (1994); syl. pt. 2, *State ex rel. Coombs v. Barnette*, 179 W.Va. 347, 368 S.E.2d 717 (1988); syl. pt. 6, *State ex rel. Williams v. Dept. of Military Affairs*, 212 W.Va. 407, 573 S.E.2d 1 (2002).

■ As this Court explained in *Gillespie*, we have looked to the United States Supreme Court for guidance on this issue, and that Court has explained that the mere fact that good time is a legislatively created right

does not permit the state to take it from a prisoner arbitrarily:

> But the State having created the right to good time ᚎ . . . the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated . . . .

We think a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of government, *Dent v. West Virginia*, 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889).

*Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935, 951–52 (1974). However, *c.f. Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which held, with respect to segregating prisoners from the general prison population, that prisoners may not have a liberty interest in being free from punitive segregation.[3]

Or, as this Court stated in a more encompassing fashion, incarceration does not strip an inmate of all rights, or deprive him or her the expectation that the state will act in a reasonable and logical manner:

> Our federal and state constitutions do not *give* liberty to people: they protect a free people from deprivation of their God-given freedom by governments. The entitlement to liberty and freedom must follow every citizen from birth to death, however mean or degenerate he may be viewed by

his government or his peers at any given time along the way.

> And so, the physical deprivation of his liberty must at every stage carry the burden upon the state to overcome the great presumption that he is a free man. His constitutional rights follow him into prison, or mental hospital, or military servitude, or wherever he is forced by the government to be.

*Watson v. Whyte*, 162 W.Va. 26, 29, 245 S.E.2d 916, 918 (1978).

■ Turning to the statute at issue, this Court has explained that, "[t]he provisions of West Virginia Code § 28–5–27 (1992) solely govern the accumulation of 'good time' for inmates sentenced to the West Virginia State Penitentiary." Syl. pt. 3, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997); *accord*, syl. pt. 3, *State ex rel. Williams v. Dept. of Military Affairs*, 212 W.Va. 407, 573 S.E.2d 1 (2002). This statute first defines good time and explains for whom it is available and how it is calculated:

> (a) All adult inmates now in the custody of the commissioner of corrections, or hereafter committed to the custody of the commissioner of corrections, except those committed pursuant to article four, chapter twenty-five of this code, shall be granted commutation from their sentences for good conduct in accordance with this section.

> (b) Such commutation of sentence, hereinafter called "good time," shall be deducted from the maximum term of indeterminate sentences or from the fixed term of determinate sentences.

> (c) Each inmate committed to the custody of the commissioner of corrections and incarcerated in a penal facility pursuant to

---

**3.** The Court stated, in part:

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see,

e.g., *Vitek [v. Jones]*, 445 U.S. [480] at 493, 100 S.Ct. [1254] at 1263–1264[, 63 L.Ed.2d 552 (1980)] (transfer to mental hospital), and *Washington [v. Harper]*, 494 U.S. [210] at 221–222, 110 S.Ct. [1028] at 1036–1037[, 108 L.Ed.2d 178 (1990)] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483–484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418, 429–30 (1995) (footnote omitted).

such commitment shall be granted one day good time for each day he or she is incarcerated, including any and all days in jail awaiting sentence and which is credited by the sentencing court to his or her sentence pursuant to section twenty-four, article eleven, chapter sixty-one of this code or for any other reason relating to such commitment. No inmate may be granted any good time for time served either on parole or bond or in any other status whereby he or she is not physically incarcerated.

W. Va.Code § 28–5–27 (1984).[4]

Of course, once granted, good time may also be taken away from an inmate who has disobeyed the rules of the prison. The section of this statute that is the cynosure of this case states:

(f) The commissioner of corrections shall promulgate separate disciplinary rules for each institution under his control in which adult felons are incarcerated, which rules shall describe acts which inmates are prohibited from committing, procedures for charging individual inmates for violation of such rules and for determining the guilt or innocence of inmates charged with such violations and the sanctions which may be imposed for such violations. A copy of such rules shall be given to each inmate. For each such violation, by an inmate so sanctioned, any part or all of the good time *which has been granted to such inmate* pursuant to this section may be forfeited and revoked by the warden or superintendent of the institution in which the violation occurred. The warden or superintendent, when appropriate and with approval of the commissioner, may restore any good time so forfeited.

W. Va.Code § 28–5–27 (1984) (emphasis added). Mr. Bailey argues that good time days are only granted to him for each day he has actually been incarcerated and been on good behavior. Thus, he claims, a maximum of

156 days of good time could have been granted to him as of April 18, 2002, so it was impossible for the respondents to have taken away more than 156 days.

The respondents argue that other requirements of the statute have the effect of forcing the state to "grant" good time days all at once at the commencement of an inmate's sentence. Respondents point us to the following:

(g) Each inmate, upon his or her commitment to and being received into the custody of the commissioner of the department of corrections, or upon his return to custody as the result of violation of parole pursuant to section nineteen, article twelve, chapter sixty-two of this code, shall be given a statement setting forth the term or length of his or her sentence or sentences and the time of his minimum discharge computed according to this section.

W. Va.Code § 28–5–27 (1984).

■■■ We note that: "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). *Accord,* syl. pt. 1, *Peyton v. City Council of Lewisburg,* 182 W.Va. 297, 387 S.E.2d 532 (1989); syl. pt. 3, *Hose v. Berkeley County Planning Commission,* 194 W.Va. 515, 460 S.E.2d 761 (1995); syl. pt. 2, *Mallamo v. Town of Rivesville,* 197 W.Va. 616, 477 S.E.2d 525 (1996). Or in other words, "[i]n any search for the meaning or proper applications of a statute, we first resort to the language itself." *Maikotter v. University of West Virginia Bd. of Trustees/West Virginia Univ.,* 206 W.Va. 691, 696, 527 S.E.2d 802, 807 (1999); *accord, Affiliated Const. Trades Foundation v. University of West Virginia Bd. of Trustees,* 210 W.Va. 456, 466, 557 S.E.2d 863, 873 (2001).[5]

While we agree that sub-section (g) of the statute requires a computation of an inmate's

---

**4.** The statute goes on to state, in part:

(d) No inmate sentenced to serve a life sentence shall be eligible to earn or receive any good time pursuant to this section.

(e) An inmate under two or more consecutive sentences shall be allowed good time as if the several sentences, when the maximum terms thereof are added together, were all one sentence.

**5.** The Court has also held:

Any rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute.

maximum *potential* good time, we are unpersuaded that this section demands a *grant* of an inmate's good time at the outset of a sentence. Obviously there are two important ingredients to each day of good time, first that the inmate serve one day in prison, and second that the inmate "be good" on that day. While some might find interesting the conceptualization of good time as a package of inchoate rights that, while granted upfront, only spring to life, or ripen, on days the inmate behaves, we are unmoved by this argument. Looking at the plain meaning of the words employed by the Legislature, we believe that when the statute says "good time which has been granted," it refers only to those days that an inmate has actually earned by being incarcerated and behaving appropriately.

We note that respondents argue that ruling in favor of Mr. Bailey could encourage new inmates, who have served little time and thus have little good time to lose, to misbehave, and that not allowing the prospective revocation of all possible good time strips the respondents of a valuable tool to control the inmate population. However, the obvious corollary to respondents' argument is that, once all the good time has been taken away from inmates like Mr. Bailey, the respondents will have then lost this tool anyway. Respondents argue that, to encourage good behavior from inmates who have lost all potential good time, they still may use the revocation of other privileges, or segregation. However, an equally strong argument can be made that these other tools may be used just as effectively on new inmates, who have little good time to lose.

Either way, at some point the respondents will have inmates who either don't have much good time to lose, or have already had their good time taken away. In either case, the respondents must resort to other means to control unruly inmates. With these two positions so equally balanced, we believe the plain meaning of the statute tips the scales and carries the day.

In the instant case, Mr. Bailey, who had been incarcerated only 156 days as of April 18, 2002, could have had a maximum of only 156 days of good time granted to him as of that date. We believe it was within the power of the magistrate to take away all of those days, but no more. Thus, we conclude that Mr. Bailey has a clear right to the relief he seeks, and that the respondents, collectively, have a legal duty to do that which Mr. Bailey seeks to compel, *i.e.*, the return of his good time taken in excess of 156 days. Moreover, Mr. Bailey has no other adequate remedy at law. In conclusion, we find it necessary to grant the requested writ of mandamus.

## IV.

## CONCLUSION

For the reasons stated, we grant the requested writ of mandamus and order that respondents restore to Mr. Bailey all days of good time taken in excess of the 156 days he had actually earned as of the date of the magistrate's order.

Writ granted.

Syl. pt. 4, *Maikotter v. University of West Virginia Bd. of Trustees/West Virginia Univ.*, 206 W.Va. 691, 527 S.E.2d 802 (1999).